Form 2

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

Case No. CIV-25-1421-R

*(to be filled in by the Clerk's Office)*

**Adewale Eniola Tawose**

*Plaintiff(s)*

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Matthew L. Winton, Matthew Adam Thomas, Matthew L. Winton PLLC., Mark Richard Grant, Brian Bowman, Silverhawk Homeowner Association Inc., Aaron Ellis, Bhunpender Pal, Denver Acosta, Amanda Lunsford, Andrew Welch

*Defendant(s)*

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Jury Trial: *(check one)* ☒ Yes ☐ No

# FILED

NOV 2 6 2025

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

## COMPLAINT FOR A CIVIL CASE

### I.    The Parties to This Complaint

#### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Adewale Eniola Tawose |
| Street Address | 301 Parish Lane, Apt. 5308 |
| City and County | Roanoke |
| State and Zip Code | Texas, 76262 |
| Telephone Number | (405) 361-8347 |
| E-mail Address | wallone@hotmail.com |

#### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 1

| | |
|---|---|
| Name | Matthew L. Winton |
| Job or Title *(if known)* | |
| Street Address | 3233 East Memorial Road, Suite 103 |
| City and County | Edmond, Oklahoma County |
| State and Zip Code | Oklahoma, 73013 |
| Telephone Number | (405) 206-9595 or (405) 478-4818 |
| E-mail Address *(if known)* | mlw@wintonlaw.net |

Defendant No. 2

| | |
|---|---|
| Name | Matthew L. Winton PLLC. |
| Job or Title *(if known)* | |
| Street Address | 3233 East Memorial Road, Suite 103 |
| City and County | Edmond, Oklahoma County |
| State and Zip Code | Oklahoma, 73013 |
| Telephone Number | (405) 478-4818 |
| E-mail Address *(if known)* | mlw@wintonlaw.net |

Defendant No. 3

| | |
|---|---|
| Name | Matt Adam Thomas |
| Job or Title *(if known)* | |
| Street Address | 3233 East Memorial Road, Suite 103 |
| City and County | Edmond, Oklahoma County |
| State and Zip Code | Oklahoma, 73013 |
| Telephone Number | (405) 478-4818 |
| E-mail Address *(if known)* | mthomas@wintonlaw.net |

Defendant No. 4

| | |
|---|---|
| Name | Silverhawk Homeowners Association |
| Job or Title *(if known)* | |
| Street Address | 3233 East Memorial Road, Suite 103 |
| City and County | Edmond, Oklahoma County |
| State and Zip Code | Oklahoma, 73013 |
| Telephone Number | (405) 478-4818 |
| E-mail Address *(if known)* | mlw@wintonlaw.net |

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. 5

| | |
|---|---|
| Name | Mark Richard Grant |
| Job or Title *(if known)* | |
| Street Address | 2416 NW 172ND Circle |
| City and County | Edmond, Oklahoma County |
| State and Zip Code | Oklahoma, 73012 |
| Telephone Number | |
| E-mail Address *(if known)* | mark.grant62@gmail.com |

Defendant No. 6

| | |
|---|---|
| Name | Brian Phillip Bowman |
| Job or Title *(if known)* | |
| Street Address | 17613 Sparrow Hawk Lane |
| City and County | Edmond, Oklahoma County |
| State and Zip Code | Oklahoma, 73012 |
| Telephone Number | (804) 721-1818 |
| E-mail Address *(if known)* | |

Defendant No. 7

| | |
|---|---|
| Name | Aaron Ellis |
| Job or Title *(if known)* | |
| Street Address | 17609 Sparrow Hawk Lane, |
| City and County | Edmond, Oklahoma County |
| State and Zip Code | Oklahoma, 73012 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 8

| | |
|---|---|
| Name | Bhupender Pal |
| Job or Title *(if known)* | |
| Street Address | 2432 NW 176th Street |
| City and County | Edmond, Oklahoma County |
| State and Zip Code | Oklahoma, 73012 |
| Telephone Number | |
| E-mail Address *(if known)* | |

Defendant No. 9

    Name                            Denver Acosta

    Job or Title *(if known)*

    Street Address                 17321 Shadow Hawk Lane

    City and County              Edmond, Oklahoma County

    State and Zip Code         Oklahoma, 73012

    Telephone Number          (405) 595-1151

    E-mail Address *(if known)*

Defendant No. 10

    Name                            Amanda Lunsford

    Job or Title *(if known)*

    Street Address                 2425 NW 174th Street

    City and County              Edmond, Oklahoma County

    State and Zip Code         Oklahoma, 73012

    Telephone Number

    E-mail Address *(if known)*

Defendant No. 11

    Name                            Andrew Welch

    Job or Title *(if known)*

    Street Address                 17304 Hawks Tree Lane

    City and County              Edmond, Oklahoma County

    State and Zip Code         Oklahoma, 73012

    Telephone Number

    E-mail Address *(if known)*    welch.andrewp@gmail.com

Defendant No. 4

    Name

    Job or Title *(if known)*

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address *(if known)*

**II.**    **Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question        ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.**    **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

**B.**    **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)* Adewale Eniola Tawose , is a citizen of the State of *(name)* Texas .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* Matthew L. Winton , is a citizen of the State of *(name)* Oklahoma . Or is a citizen of *(foreign nation)* _____ .

    b.    If the defendant is a corporation

        The defendant, *(name)* _____, is incorporated under

        the laws of the State of *(name)* _____, and has its

        principal place of business in the State of *(name)* _____.

        Or is incorporated under the laws of *(foreign nation)* _____,

        and has its principal place of business in *(name)* _____.

        *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

        The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
        **Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

### See *STATEMENT OF CLAIM AGAINST MATTHEW L. WINTON*

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### See *RELIEF (Against Matthew L. Winton)*

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

   a.     If the plaintiff is an individual

   The plaintiff, *(name)* Adewale Eniola Tawose , is a citizen of the State of *(name)* Texas .

   b.     If the plaintiff is a corporation

   The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

   a.     If the defendant is an individual

   The defendant, *(name)* Matt Adam Thomas , is a citizen of the State of *(name)* Oklahoma . Or is a citizen of *(foreign nation)* _____ .

b.   If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.   The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake– is more than $75,000, not counting interest and costs of court, because *(explain)*: **Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

## See *STATEMENT OF CLAIM AGAINST MATT ADAM THOMAS*

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

## See *RELIEF (Against Matt Adam Thomas)*

**II.     Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.     If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

**B.     If the Basis for Jurisdiction Is Diversity of Citizenship**

   1.   The Plaintiff(s)

        a.   If the plaintiff is an individual

             The plaintiff, *(name)*   Adewale Eniola Tawose                    , is a citizen of the State of *(name)*   Texas                    .

        b.   If the plaintiff is a corporation

             The plaintiff, *(name)*                         , is incorporated under the laws of the State of *(name)*                         ,

             and has its principal place of business in the State of *(name)*

             _____ .

             *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

   2.   The Defendant(s)

        a.   If the defendant is an individual

             The defendant, *(name)*   Mark Richard Grant                    , is a citizen of the State of *(name)*   Oklahoma                    . Or is a citizen of *(foreign nation)*                         .

Page 3 of 5

b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

**Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

### See *STATEMENT OF CLAIM AGAINST MARK RICHARD GRANT*

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### See *RELIEF (Against Mark Richard Grant)*

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**II.    Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.    If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

**B.    If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*   Adewale Eniola Tawose                , is a citizen of the State of *(name)*   Texas                .

b.    If the plaintiff is a corporation

The plaintiff, *(name)*                          , is incorporated under the laws of the State of *(name)*                          , and has its principal place of business in the State of *(name)*                          .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)*   Brian Phillip Bowman              , is a citizen of the State of *(name)*   Oklahoma              . Or is a citizen of *(foreign nation)*                          .

Page 3 of 5

b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
**Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

### See *STATEMENT OF CLAIM AGAINST BRIAN PHILLIP BOWMAN*

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### See *RELIEF (Against Brian Phillip Bowman)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question            ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

    a.    If the plaintiff is an individual

        The plaintiff, *(name)* Adewale Eniola Tawose, is a citizen of the State of *(name)* Texas.

    b.    If the plaintiff is a corporation

        The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

    *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

    a.    If the defendant is an individual

        The defendant, *(name)* Aaron Ellis, is a citizen of the State of *(name)* Oklahoma. Or is a citizen of *(foreign nation)* _____.

    b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under
the laws of the State of *(name)* _____ , and has its
principal place of business in the State of *(name)* _____ .
Or is incorporated under the laws of *(foreign nation)* _____ ,
and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:
**Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

### See *STATEMENT OF CLAIM AGAINST AARON ELLIS*

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### See *RELIEF (Against Aaron Ellis)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*  Adewale Eniola Tawose                    , is a citizen of the State of *(name)*  Texas                    .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)*  Denver Acosta                    , is a citizen of the State of *(name)*  Oklahoma                    . Or is a citizen of *(foreign nation)* _____ .

Page 3 of 5

b.    If the defendant is a corporation

The defendant, *(name)* _____ , is incorporated under

the laws of the State of *(name)* _____ , and has its

principal place of business in the State of *(name)* _____ .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake– is more than $75,000, not counting interest and costs of court, because *(explain)*:
**Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

### See *STATEMENT OF CLAIM AGAINST DENVER ACOSTA*

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### See *RELIEF (Against Denver Acosta)*

**II.**    **Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.**    **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

**B.**    **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*   Adewale Eniola Tawose              , is a citizen of the State of *(name)*   Texas                .

b.    If the plaintiff is a corporation

The plaintiff, *(name)*                              , is incorporated under the laws of the State of *(name)*                                ,

and has its principal place of business in the State of *(name)*

.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)*   Bhupender Pal              , is a citizen of the State of *(name)*   Oklahoma              . Or is a citizen of *(foreign nation)*                        .

b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:
**Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

### See *STATEMENT OF CLAIM AGAINST BHUPENDER PAL*

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### See *RELIEF (Against Bhupender Pal)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question       ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

   a.    If the plaintiff is an individual

   The plaintiff, *(name)* Adewale Eniola Tawose , is a citizen of the State of *(name)* Texas .

   b.    If the plaintiff is a corporation

   The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ ,

   and has its principal place of business in the State of *(name)* _____ .

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

   a.    If the defendant is an individual

   The defendant, *(name)* Amanda Lunsford , is a citizen of the State of *(name)* Oklahoma . Or is a citizen of *(foreign nation)* _____ .

Page 3 of 5

    b.    If the defendant is a corporation

        The defendant, *(name)* _____ , is incorporated under

        the laws of the State of *(name)* _____ , and has its

        principal place of business in the State of *(name)* _____ .

        Or is incorporated under the laws of *(foreign nation)* _____ ,

        and has its principal place of business in *(name)* _____ .

        *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

    3.    The Amount in Controversy

        The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:
**Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.  Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

## See *STATEMENT OF CLAIM AGAINST AMANDA LUNSFORD*

## IV.  Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

## See *RELIEF (Against Amanda Lunsford)*

**II.**    **Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.**    **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

**B.**    **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual
The plaintiff, *(name)*  Adewale Eniola Tawose , is a citizen of the
State of *(name)*  Texas .

b.    If the plaintiff is a corporation
The plaintiff, *(name)* , is incorporated
under the laws of the State of *(name)* ,
and has its principal place of business in the State of *(name)*

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual
The defendant, *(name)*  Andrew Welch , is a citizen of
the State of *(name)*  Oklahoma . Or is a citizen of
*(foreign nation)*

b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under

the laws of the State of *(name)* _____, and has its

principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____,

and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
**Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

### See *STATEMENT OF CLAIM AGAINST ANDREW WELCH*

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### See *RELIEF (Against Andrew Welch)*

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question          ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.    If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

### B.    If the Basis for Jurisdiction Is Diversity of Citizenship

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*  Adewale Eniola Tawose                    , is a citizen of the State of *(name)*  Texas                    .

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name)* _____ , and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____ .

b.   If the defendant is a corporation

The defendant, *(name)* Silverhawk Homeowners Association , is incorporated under

the laws of the State of *(name)* Oklahoma , and has its

principal place of business in the State of *(name)* Oklahoma .

Or is incorporated under the laws of *(foreign nation)* ,

and has its principal place of business in *(name)* Oklahoma .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.   The Amount in Controversy

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:
**Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

### See *STATEMENT OF CLAIM AGAINST SILVERHAWK HOMEOWNERS' ASSOCIATION, INC.*

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

### See *RELIEF (Against Silverhawk Homeowners' Association)*

**II.**    **Basis for Jurisdiction**

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal question    ☒ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

**A.**    **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

**B.**    **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.    The Plaintiff(s)

a.    If the plaintiff is an individual

The plaintiff, *(name)*  Adewale Eniola Tawose _____, is a citizen of the State of *(name)*  Texas _____.

b.    If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.    The Defendant(s)

a.    If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

b.    If the defendant is a corporation

The defendant, *(name)* **Matthew L. Winton PLLC.**, is incorporated under

the laws of the State of *(name)*    Oklahoma    , and has its

principal place of business in the State of *(name)*    Oklahoma    .

Or is incorporated under the laws of *(foreign nation)*    ,

and has its principal place of business in *(name)*    Oklahoma    .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:
**Plaintiff seeks actual, compensatory, and punitive damages against Defendant for severe, willful, and malicious torts, including Civil Conspiracy, Fraudulent Concealment, and Intentional Infliction of Emotional Distress. The damages include: (1) Actual Financial Losses; (2) Significant Compensatory Damages for the severe emotional distress, anxiety, and psychological strain caused by the risk of losing Plaintiff's home; and (3) Substantial Punitive Damages based on the Defendant's extreme and outrageous conduct. The cumulative damages associated with these events exceed $75,000.**

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

## See *STATEMENT OF CLAIM AGAINST MATTHEW L. WINTON PLLC*

## IV.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

## See *RELIEF (Against Matthew L. Winton PLLC.)*

**V.    Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.    For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    **11/26/2025**

Signature of Plaintiff

Printed Name of Plaintiff    Adewale Eniola Tawose

**B.    For Attorneys**

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

## III. STATEMENT OF CLAIM AGAINST MATTHEW L. WINTON

### 1. Jurisdiction and Procedural Preservation

- **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.

- **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

### 2. Factual Background

- Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

- **Attorney's Knowledge and Defective Documents:** Defendant Matthew L. Winton ("Winton") is an attorney who represented Silverhawk. On March 24, 2017, Winton prepared and recorded a document in the county land records stating that in-home daycares were permitted, knowing or having reason to know this document had not been adopted through Silverhawk's required procedures.

- **2021 Procedural Defects:** Winton participated in the July 6, 2021, hearing and was informed by Plaintiff that his rental use had previously been confirmed as permitted in 2019. Despite the absence of a hearing result or internal appeal process required by governing documents, Winton approved the filing of a lawsuit against Plaintiff on November 5, 2021.

- **Discovery Misconduct & Trial Ambush:** During discovery (2022–2023), Winton failed to disclose the identity of former board member Amanda Lunsford ("Lunsford"). Lunsford appeared as an undisclosed witness at trial on February 1, 2024, and offered testimony that Plaintiff's rental was not permitted, directly contradicting her 2019 assurance, thereby destroying Plaintiff's primary defense. Lunsford also testified in support of Silverhawk's nuisance claim against Plaintiff, even though Winton had represented to Plaintiff that no such evidence or witness existed.

- **Financial Misconduct:** Winton relied on lien balances recorded on April 9 and June 14, 2024, that were inaccurate. Winton ignored written notice from Plaintiff on April 26, 2024, that the balances were incorrect, and continued to pursue execution, foreclosure efforts, and filed a Bankruptcy Proof of Claim on December 13, 2024, using the same inaccurate balances.

### 3. CAUSES OF ACTION

**I.**    **Gross Negligence:** Defendant Winton acted with reckless disregard for Plaintiff's rights by: **(a)** Preparing and recording a defective document in the land records in 2017, and allowing Silverhawk to represent to Plaintiff that the document was valid; **(b)** Approving the lawsuit despite the failure to provide Plaintiff the required due

process; **(c)** Disregarding the effect of a lawsuit on Plaintiff, despite knowing that Plaintiff previously verified with Silverhawk that his rental was permitted; **(d)** Withholding material discovery information (Lunsford) leading to an unfair trial ambush where Lunsford testified that Plaintiff's rental was not permitted, directly contradicting her 2019 assurance and destroying Plaintiff's primary defense; and **(e)** Failing to verify accounting records and ignoring multiple written notices of payment while continuing to rely on erroneous figures in foreclosure and bankruptcy attempts.

II.    **Constructive Fraud**: Winton breached his duty of professional candor and good faith by representing that Silverhawk had no nuisance evidence or witnesses, while simultaneously arranging for the surprise hostile testimony of Amanda Lunsford at trial. This breach gained an unfair advantage because Winton knew Lunsford's concealed testimony would contradict her 2019 assurance by claiming the rental was not permitted, and that no evidence in support of a nuisance claim existed, thereby destroying Plaintiff's primary defense without opportunity for preparation.

III.    **Fraudulent/False Misrepresentation:** Winton committed a material misrepresentation of fact by failing to disclose the identity of witness Amanda Lunsford, whose intended testimony that Plaintiff's rental was not permitted was the single most material fact concealed during discovery. Lunsford also testified that Plaintiff's property was a nuisance. These omissions were made with the intent that Plaintiff would proceed to trial unprepared. Plaintiff acted in reliance upon the false representation that discovery was complete and accurate, and was unable to prepare a response to the contradictory testimony introduced at trial

IV.    **Concealment / Suppression**: Winton deliberately or recklessly suppressed material information by failing to disclose Amanda Lunsford as a witness during the discovery phase (2022–2023). The concealed information included Lunsford's intended testimony that Plaintiff's rental use was not permitted, which created a core factual contradiction of Plaintiff's defense. This active concealment was done with the intent that Plaintiff would rely on the representation that discovery was complete. Plaintiff acted in reliance upon the completeness of discovery, which prevented him from preparing a defense for trial against Lunsford's ambush testimony.

V.    **Slander of Title:** Defendant Matthew L. Winton, in his capacity as the attorney for Silverhawk, caused the publication of false statements disparaging Plaintiff's property title by directing the recording of liens on April 9 and June 14, 2024. These liens contained inaccurate balances, which Winton later relied upon in subsequent enforcement efforts, including a writ of execution, initiating foreclosure proceedings against Plaintiff's home on or about August 16 and September 9, 2024, and the filing of the Bankruptcy Proof of Claim on December 13, 2024. The recording of these inaccurate liens constituted a false and malicious publication that caused financial damages to the Plaintiff, including the costs of defending the related foreclosure and bankruptcy claims.

VI.    **Violation of the Fair Debt Collection Practices Act (FDCPA):** Plaintiff is a consumer, and the debt at issue arises from amounts claimed by Silverhawk Homeowners Association ("Silverhawk"). Defendant Matthew L. Winton ("Winton") acted as a debt collector on behalf of Silverhawk. Winton violated the FDCPA by

using unfair and deceptive means to collect the alleged debt: **(a) False or Misleading Representations:** Winton relied on lien balances that were inaccurate and included amounts Plaintiff had already paid. On April 23, 2024, Winton attempted to garnish Plaintiff's bank account for debt Plaintiff had already satisfied; **(1)** on April 9 and June 13, 2024, Winton filed a lien against Plaintiff's property based on debt that was not owed or had been satisfied. **(2)** On August 16 Winton got an ex-parte writ of execution and on September 9, 2024, initiated foreclosure proceedings against Plaintiff's home; **(3)** Winton also authorized the filing of a proof of claim on December 13, 2024, in Plaintiff's bankruptcy using the same erroneous figures; **b) Unfair Practices:** Winton continued to use and rely upon the inaccurate liens after receiving written notice from Plaintiff on April 26, 2024, and January 21, 2025, detailing the error, and refusing to remove them.

VII.    **Abuse of Process:** Winton utilized the judicial process—the filing of the lawsuit itself—not for its proper purpose, but to harass Plaintiff and secure an advantage for Silverhawk. This improper use is demonstrated by Winton's participation in the decision to file suit on November 5, 2021, despite knowing that the Association failed to provide the required hearing results or appeal opportunity, thereby utilizing litigation to bypass the necessary internal due process and pressure Plaintiff into stopping his rental, his direction of execution and foreclosure efforts (Aug 16, Sept 9, 2024) and his filing of a Bankruptcy Proof of Claim (Dec 13, 2024) containing false amounts. This improper use is further demonstrated by Winton's reliance on inaccurate financial figures and his ignoring of written notice of payment errors, with the ultimate motive of forcing Plaintiff into an unavoidable foreclosure.

VIII.   **Civil Conspiracy:** Winton acted in concert with Silverhawk board members and agents to commit the torts alleged herein. The agreement is demonstrated by Winton filing a lawsuit despite Silverhawk's previous confirmation that Plaintiff's rental was permitted, Winton's participation in the initial decision to file suit without a hearing result or internal appeal, the suppression of evidence (Lunsford) during discovery, and the coordinated effort to rely on inaccurate lien balances in multiple courts to pursue foreclosure.

IX.     **Intentional Infliction of Emotional Distress (IIED):** Winton participated in a continuous pattern of extreme and outrageous conduct by initiating a lawsuit without due process, actively suppressing evidence (Lunsford), orchestrating the ambush testimony that the rental was not permitted (contradicting prior assurance), and continuing to pursue foreclosure based on inaccurate debts and fraudulent claims even after being notified in writing of the errors.

## 4.  Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that

contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Matthew L. Winton)

Plaintiff respectfully requests that the Court enter judgment against Defendant Matthew L. Winton in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing. These damages resulted from his actions in approving the defective lawsuit, concealing evidence, and pursuing false debt claims.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by his extreme and outrageous conduct (IIED).

3. **Punitive Damages:** Defendant's conduct was willful, wanton, and malicious, specifically demonstrated by: **(a)** concealing Lunsford's contradictory testimony; **(b)** utilizing defective documents in the land records; and **(c)** pursuing foreclosure based on inaccurate debts and fraudulent claims even after being notified in writing of the errors. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, the continuing impact of the unreleased liens, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific and Statutory Relief

1. **FDCPA Statutory Damages:** An award of Statutory Damages of $1,000 per violation for violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692e and § 1692f).

2. **FDCPA Attorneys' Fees:** An award of attorneys' fees and costs incurred in pursuing the FDCPA claims, as authorized by 15 U.S.C. § 1692k.

3. **Quieting Title / Slander of Title:** An order Quieting Title to Plaintiff's property and requiring Defendant to participate in the execution of a full release of the inaccurate liens recorded on April 9, 2024, and June 14, 2024, as a remedy for the claims of Slander of Title and Abuse of Process.

4. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

5. Any further relief as the Court deems just and proper.

## III. STATEMENT OF CLAIM AGAINST MATT ADAM THOMAS

1. **Jurisdiction and Procedural Preservation**

   - **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.

   - **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

2. **Factual Background**

   - Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

   - **Attorney's Role:** Defendant Matt Adam Thomas ("Thomas") is an attorney who served as co-counsel for the Silverhawk Homeowners Association ("Silverhawk") after the lawsuit was filed on November 5, 2021.

   - **Pre-Lawsuit Facts:** Silverhawk confirmed Plaintiff's rental use was allowed on October 27, 2019, before reversing its position. Silverhawk filed suit despite failing to provide Plaintiff with the July 6, 2021, hearing result or the internal appeal process.

   - **Discovery and Concealment:** Between 2022 and 2023, Plaintiff repeatedly requested information regarding nuisance claims and witnesses. In written discovery and on or about July 28, 2023, Thomas and co-counsel represented that Silverhawk had no nuisance evidence or witnesses and that none would be presented at trial.

   - **Trial Ambush and Contradiction:** On February 1, 2024, at trial, Thomas and co-counsel presented the undisclosed witness, Amanda Lunsford ("Lunsford"). Lunsford's testimony offered both nuisance claims and, critically, stated that Plaintiff's rental was not permitted, directly contradicting her 2019 assurance, thereby destroying Plaintiff's primary defense without an opportunity for preparation.

   - **Financial Misconduct:** Thomas relied on inaccurate lien balances recorded on April 9 and June 14, 2024. Thomas ignored written notice from Plaintiff on April 26, 2024, that the balances were incorrect, and continued to pursue execution, foreclosure efforts, and filed a Bankruptcy Proof of Claim on December 13, 2024, using the same inaccurate balances.

3. **CAUSES OF ACTION**

   I.  **Gross Negligence:** Defendant Thomas acted with reckless disregard for Plaintiff's rights by: **(a)** Prosecuting the lawsuit despite Silverhawk failing to provide Plaintiff the required due process; **(b)** Disregarding the effect of a lawsuit on Plaintiff, despite knowing Silverhawk previously verified Plaintiff could rent his home; **(c)** Withholding material discovery information (Lunsford) leading to an unfair trial ambush where Lunsford testified that Plaintiff's rental was not permitted, directly

contradicting her 2019 assurance and destroying Plaintiff's primary defense; and **(d)** Failing to verify accounting records and ignoring multiple written notices of payment while continuing to rely on erroneous figures in foreclosure and bankruptcy attempts.

**II.    Constructive Fraud**: Thomas breached his duty of professional candor and good faith by representing that Silverhawk had no nuisance evidence or witnesses, while simultaneously arranging for the surprise hostile testimony of Amanda Lunsford at trial. This breach gained an unfair advantage to Silverhawk because Thomas knew Lunsford's concealed testimony would contradict her 2019 assurance by claiming the rental was not permitted, thereby destroying Plaintiff's primary defense without opportunity for preparation. Plaintiff relied on the completeness of discovery and was prejudiced by the ambush testimony, which led directly to the adverse judgment.

**III.    Fraudulent/False Misrepresentation:** Thomas committed a material misrepresentation of fact by failing to disclose the identity of witness Amanda Lunsford, whose intended testimony that Plaintiff's rental was not permitted was the single most material fact concealed during discovery. Lunsford also testified that Plaintiff's property was a nuisance. These omissions were made with the intent that Plaintiff would proceed to trial unprepared. Plaintiff acted in reliance upon the false representation that discovery was complete and accurate, and was unable to prepare a response to the contradictory testimony introduced at trial.

**IV.    Concealment / Suppression:** Thomas deliberately or recklessly suppressed material information by failing to disclose Amanda Lunsford as a witness during the discovery phase (2022–2023). The concealed information included Lunsford's intended testimony that Plaintiff's rental use was not permitted, which created a core factual contradiction of Plaintiff's defense. This active concealment was done with the intent that Plaintiff would rely on the representation that discovery was complete. Plaintiff acted in reliance upon the completeness of discovery, which prevented him from preparing a defense for trial against Lunsford's ambush testimony.

**V.    Slander of Title** Defendant Matt Adam Thomas, in his capacity as the attorney for Silverhawk, caused the publication of false statements disparaging Plaintiff's property title by directing the recording of liens on April 9 and June 14, 2024. These liens contained inaccurate balances, which Thomas later relied upon in subsequent enforcement efforts, including a writ of execution, initiating foreclosure proceedings against Plaintiff's home on or about August 16 and September 9, 2024, and the filing of the Bankruptcy Proof of Claim on December 13, 2024. The recording of these inaccurate liens constituted a false and malicious publication that caused financial damages to the Plaintiff, including the costs of defending the related foreclosure and bankruptcy claims.

**VI.    Violation of the Fair Debt Collection Practices Act (FDCPA):** Plaintiff is a consumer, and the debt at issue arises from amounts claimed by Silverhawk Homeowners Association ("Silverhawk"). Defendant Matt Adam Thomas ("Thomas") acted as a debt collector on behalf of Silverhawk. Thomas violated the FDCPA by using unfair and deceptive means to collect the alleged debt: **(a) False or Misleading Representations:** Thomas relied on lien balances that were inaccurate and included amounts Plaintiff had already paid. On April 23, 2024, Thomas

attempted to garnish Plaintiff's bank account for debt Plaintiff had already satisfied; **(1)** on April 9 and June 13, 2024, Thomas filed a lien against Plaintiff's property based on debt that was not owed or had been satisfied. **(2)** On August 16 Thomas got an ex-parte writ of execution and on September 9, 2024, initiated foreclosure proceedings against Plaintiff's home; **(3)** Thomas also authorized the filing of a proof of claim on December 13, 2024, in Plaintiff's bankruptcy using the same erroneous figures; **b) Unfair Practices:** Thomas continued to use and rely upon the inaccurate liens after receiving written notice from Plaintiff on April 26, 2024, and January 21, 2025, detailing the error, and refusing to remove them.

**VII.**    **Abuse of Process**: Thomas utilized the judicial process—the filing of the lawsuit itself—not for its proper purpose, but to harass Plaintiff and secure an advantage for Silverhawk. This improper use is demonstrated by Thomas's participation in the decision to file suit on November 5, 2021, despite knowing that the Association failed to provide the required hearing results or appeal opportunity, thereby utilizing litigation to bypass the necessary internal due process and pressure Plaintiff into stopping his rental, his direction of execution and foreclosure efforts (Aug 16, Sept 9, 2024) and his filing of a Bankruptcy Proof of Claim (Dec 13, 2024) containing false amounts. This improper use is further demonstrated by Thomas's reliance on inaccurate financial figures and his ignoring of written notice of payment errors, with the ultimate motive of forcing Plaintiff into an unavoidable foreclosure.

**VIII.**    **Civil Conspiracy:** Thomas acted in concert with co-counsel and other Silverhawk board members to commit the torts alleged herein. The agreement is demonstrated by the coordinated acts of: **(a)** Continuing to pursue lawsuit against Plaintiff despite Silverhawk's previous confirmation that Plaintiff's rental was allowed; **(b)** The lack of due process before filing the lawsuit; **(c)**Withholding disclosure of Amanda Lunsford as a witness; **(d)** orchestrating the ambush testimony that contradicted known prior assurances; and **(e)** coordinating the continued use of inaccurate lien balances in enforcement, foreclosure, and bankruptcy proceedings.

**IX.**    **Intentional Infliction of Emotional Distress (IIED):** Thomas participated in a continuous pattern of extreme and outrageous conduct by initiating a lawsuit without due process, actively suppressing evidence (Lunsford), and orchestrating the ambush testimony that the rental was not permitted (contradicting prior assurance). Furthermore, Thomas continued to pursue foreclosure based on inaccurate debts and fraudulent claims even after being notified in writing of the errors. This conduct caused Plaintiff severe emotional distress and related financial consequences, constituting the damages detailed in this Complaint.

## 4.  Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that

contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Matt Adam Thomas)

Plaintiff respectfully requests that the Court enter judgment against Defendant Matt Adam Thomas in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing. These damages resulted from his actions in concealing evidence (Lunsford), directing the filing of inaccurate liens, and pursuing false debt claims.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by his extreme and outrageous conduct (IIED).

3. **Punitive Damages:** Defendant Thomas's conduct was willful, wanton, and malicious, specifically demonstrated by: (a) representing that Silverhawk had no nuisance evidence while suppressing Lunsford's contradictory testimony; (b) directing the recording of inaccurate liens; and (c) pursuing foreclosure based on inaccurate debts and fraudulent claims even after being notified in writing of the errors. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, the continuing impact of the unreleased liens, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific and Statutory Relief

1. **FDCPA Statutory Damages:** An award of Statutory Damages of $1,000 per violation for violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692e and § 1692f).

2. **FDCPA Attorneys' Fees:** An award of attorneys' fees and costs incurred in pursuing the FDCPA claims, as authorized by 15 U.S.C. § 1692k.

3. **Quieting Title / Slander of Title:** An order Quieting Title to Plaintiff's property and requiring this Defendant to participate in the execution of a full release of the inaccurate liens recorded on April 9, 2024, and June 14, 2024, as a remedy for the claims of Slander of Title and Abuse of Process.

4. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

5. Any further relief as the Court deems just and proper.

## III. STATEMENT OF CLAIM AGAINST MARK RICHARD GRANT

**1. Jurisdiction and Procedural Preservation**

- **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.

- **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

**2. Factual Background**

- Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

- **2019–2021:** On October 27, 2019, Silverhawk, including Grant, was informed of Plaintiff's short-term rental inquiry, which the Board confirmed was allowed. Grant's silence in response to the confirmation constituted an initial agreement.

- **Contradictory Statement:** On February 21, 2021, Grant notified Plaintiff that his rental was not permitted. In that same communication, Grant stated that in-home daycares were allowed. This contradictory statement created an implicit misrepresentation regarding the breadth and scope of the governing documents. This implicit misrepresentation was relied upon by Plaintiff until it was explicitly contradicted by Grant's own testimony at trial on January 31, 2024.

- **Rescinded Hearing:** Plaintiff requested a hearing on March 9, 2021, which was granted. On or about March 23, 2021, Grant, acting as a board member, approved the decision to rescind the granted hearing without explanation.

- **Departure:** Grant left the board before the lawsuit was filed on November 5, 2021. However, the tortious acts of reversing the prior approval, making a contradictory statement, and denying due process (rescinding the hearing) were completed while he was still serving, and directly contributed to the filing of the defective lawsuit and subsequent damages.

**3. CAUSES OF ACTION**

    **I.**    **Breach of Fiduciary Duty:** Grant, as a Silverhawk Board Member, breached his duty of good faith and due care by: **(a)** making a contradictory and misleading statement on February 21, 2021, reversing the 2019 rental approval; and **(b)** approving the decision to rescind the granted hearing on March 23, 2021, without providing an explanation or an alternative appeal process.

    **II.**    **Constructive Fraud:** Grant breached his duty of candor by **(a)** representing to Plaintiff on October 27, 2019, that Plaintiff's rental was permitted; **(b)** by rescinding a granted hearing on March 23, 2021, without explanation; **(c)** and by issuing a

contradictory notice on February 21, 2021, regarding in-home daycares[1]. This latter contradictory statement was a breach of duty that gained an unfair advantage for Silverhawk by misleading Plaintiff. The misleading occurred because Plaintiff prepared his defense in reliance upon the statement's validity until it was explicitly contradicted by Grant's testimony at trial on January 31, 2024.

**III.**     **Gross Negligence:** Defendant Grant acted with reckless disregard for Plaintiff's rights by: **(a)** issuing a contradictory notice on February 21, 2021, from what Grant initially represented to Plaintiff on October 27, 2019, (including the false statement about daycares); and **(b)** disregarding the effect of the reversal on Plaintiff; **(c)** participating in the decision to rescind the granted hearing on March 23, 2021, thereby denying Plaintiff the due process required by the governing documents. This conduct set in motion the defective enforcement action that led to the lawsuit. This reckless conduct required Plaintiff to defend a multiyear lawsuit, resulting in the damages detailed in this Complaint.

**IV.**     **Fraudulent/False Misrepresentation:** The false statement in the February 21, 2021, notice asserting that in-home daycares were allowed constitutes a material misrepresentation of fact. This statement was relied upon by Plaintiff in assessing the scope of his defense and the governing documents. This misrepresentation was maintained until Grant contradicted it at trial on January 31, 2024. Plaintiff reasonably relied on the representation's validity before the trial contradiction.

**V.**     **Civil Conspiracy:** Grant acted in concert with other Silverhawk board members to commit the torts alleged herein. The agreement is demonstrated by Grant's participation in the collective decision to reverse the 2019 rental approval, issue the contradictory February 2021 notice, and rescind the March 2021 hearing without explanation, which created the initial procedural flaw leading to the lawsuit. In addition to this, upon information and belief, Grant participated in the effort to conceal the identity of former board member Amanda Lunsford, who would testify on undisclosed testimony to Plaintiff, hereby prejudicing Plaintiff. These torts resulted in the financial and emotional damages detailed in this Complaint.

**VI.**     **Intentional Infliction of Emotional Distress (IIED):** Grant participated in a continuous pattern of extreme and outrageous conduct by abruptly and repeatedly reversing the Association's approval of Plaintiff's rental use and denying him his due process rights by rescinding a granted hearing without notice or explanation, concealing the identity of a surprise witness, all in an effort to force Plaintiff to stop renting his home. This conduct caused Plaintiff severe emotional distress and related financial consequences, constituting the damages detailed in this Complaint.


## 4.  Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

---

[1] Grant informed Plaintiff that although Plaintiff's rental was not allowed, in-home daycares were permitted in Silverhawk.

**PLAINTIFF'S ORIGINAL COMPLAINT AGAINST MARK RICHARD GRANT**

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Mark Richard Grant)

Plaintiff respectfully requests that the Court enter judgment against Defendant Mark Grant in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing. These damages directly resulted from his participation in the procedural failures, misrepresentations, and concealment of evidence.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by his extreme and outrageous conduct (IIED).

3. **Punitive Damages:** Defendant Grant's conduct was willful, wanton, and malicious, specifically demonstrated by his: **(a)** failure to respond to inquiries and correct the procedural default; **(b)** rescinding a previously granted hearing without explanation; and **(c)** his active participation in the concealment of the Lunsford ambush testimony. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact, based on the nature and extent of his involvement in the fraud and conspiracy.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, the continuing impact of the unreleased liens, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific Relief

1. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

2. Any further relief as the Court deems just and proper.

## III. STATEMENT OF CLAIM AGAINST BRIAN PHILLIP BOWMAN

1. **Jurisdiction and Procedural Preservation**

- **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.

- **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

2. **Factual Background**

- Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

- **2019–2021:** On October 27, 2019, Silverhawk Homeowners Association ("Silverhawk") approved Plaintiff's rental use. In 2021, Defendant Brian Bowman ("Bowman"), acting as a board member, participated in rescinding a scheduled hearing on March 9, 2021, without notice. Following a subsequent hearing on July 6, 2021, Bowman withheld the results, preventing Plaintiff from exercising appeal rights before Silverhawk filed suit against Plaintiff on November 5, 2021.

- **2022–2024:** During discovery (2022–2023), Bowman participated in withholding the identity of witness Amanda Lunsford ("Lunsford"). The undisclosed witness (Lunsford) testified on February 1, 2024, not only to nuisance claims but also contradicting the October 27, 2019, rental approval, thereby destroying Plaintiff's primary defense at trial.

- **2024–2025:** Bowman, acting in his capacity as a board member, authorized and directed the recording of liens against Plaintiff's home on April 9 and June 14, 2024. These liens included amounts already paid. Bowman signed a sworn affidavit in the bankruptcy court on February 3, 2025, asserting a false and materially inaccurate amount owed.

3. **CAUSES OF ACTION**

   I.   **Breach of Fiduciary Duty:** Defendant Bowman, serving as a Silverhawk board member, breached his fiduciary duty to Plaintiff by participating in the rescission of the March 9, 2021, hearing without explanation and by withholding the results of the July 6, 2021, hearing. These actions denied Plaintiff the due process and internal appeal rights mandated by the governing documents.

   II.  **Constructive Fraud:** Defendant breached his duty of disclosure by actively concealing the identity of a key witness, Amanda Lunsford, during the 2022–2023 discovery period. Bowman's breach of duty gained an unfair advantage because Lunsford's ambush testimony at trial introduced undisclosed nuisance testimony as well as contradicted Silverhawk's prior assurance that the rental was permitted, thereby undermining the Plaintiff's primary defense. Plaintiff reasonably relied on the representation of completeness in discovery.

**III.    Concealment / Suppression**: During the discovery period of 2022–2023, Defendant actively suppressed material evidence, specifically the identity of Amanda Lunsford and her intended testimony that Plaintiff's rental was a nuisance, as well as contradicted the October 27, 2019, rental approval. Defendant allowed litigation to proceed to trial knowing Plaintiff was unaware of this key witness and the central contradiction of his defense, thereby denying Plaintiff a fair opportunity to prepare.

**IV.    Fraudulent/False Misrepresentation:** The withholding of the identity of a key witness and the representation to Plaintiff that discovery was complete constitutes deceptive conduct and a material misrepresentation of fact. Plaintiff reasonably relied on Defendant's assertions of procedural candor in planning his defense, resulting in significant prejudice when undisclosed evidence and witness were introduced at trial.

**V.    Slander of Title:** Defendant Bowman, acting in his capacity as a Board Member, authorized and directed the publication of false statements disparaging Plaintiff's property title by causing the recording of liens in the Oklahoma County land records on April 9 and June 14, 2024. These liens contained inaccurate balances and included amounts Plaintiff had already satisfied. Defendant refused to release or correct these liens despite receiving written notice of the errors.

**VI.    Gross Negligence** Defendant acted with reckless disregard for Plaintiff's rights by failing to provide Plaintiff the hearing result and appeal required by the governing document before authorizing a lawsuit and later failing to disclose a key witness whose testimony contradicted Silverhawk's prior assurance. Disregarding the effect of a lawsuit on Plaintiff, despite knowing that Plaintiff verified with Silverhawk before renting. Defendant also failed to verify accounting records before signing a sworn declaration in Plaintiff's bankruptcy case. Defendant persisted in using these disputed figures to support foreclosure efforts even after Plaintiff provided proof of payment.

**VII.    Abuse of Process:** Defendant Bowman utilized the judicial process—including his participation in the decision to file and maintain the lawsuit —not for its proper purpose, but to harass Plaintiff, pressure him to stop renting his home, and secure an unfair advantage. This improper use is demonstrated by Bowman's action in initiating and continuing the suit despite knowing that Silverhawk had previously confirmed Plaintiff's rental use and that the lawsuit was filed without providing the required due process. Bowman further abused the process through subsequent financial actions by submitting a sworn affidavit containing a false amount owed, all with the ulterior motive of forcing Plaintiff into an unavoidable foreclosure.

**VIII.    Civil Conspiracy:** Defendant acted in concert with other Silverhawk board members and agents to commit the torts alleged herein. Specific coordinated acts included the collective decision to withhold the July 2021 hearing results, advance enforcement and litigation decisions based on incomplete or inconsistent information, denying Plaintiff due process before suing, and the suppression of evidence (Lunsford), and the orchestration of Lunsford's ambush testimony that contradicted the prior rental approval.

**IX.    Intentional Infliction of Emotional Distress (IIED)**: Defendant's pattern of conduct was extreme and outrageous. This conduct included rescinding hearings without

notice, suing despite not providing Plaintiff due process, orchestrating the ambush testimony that contradicted the prior rental approval, and manipulating lien classifications in different courts to force foreclosure. As a direct result, Plaintiff was forced into bankruptcy on September 11, 2024, and suffered severe emotional distress.

## 4. Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Brian Phillp Bowman)

Plaintiff respectfully requests that the Court enter judgment against Defendant Brian Bowman in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing. These damages directly resulted from his participation in the procedural failures, concealment, and the use of inaccurate debt figures.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by his extreme and outrageous conduct (IIED).

3. **Punitive Damages:** Defendant Bowman's conduct was willful, wanton, and malicious, specifically demonstrated by his: **(a)** participation in the concealment of the Lunsford ambush testimony that destroyed the rental defense; **(b)** directing the filing of the inaccurate liens; and **(c)** signing a false sworn affidavit in the bankruptcy court. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact, based on the nature and extent of his involvement in the fraud and conspiracy.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, the continuing impact of the unreleased liens, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific and Equitable Relief

1. **Slander of Title / Quiet Title:** An order requiring Defendant Bowman to participate in the execution of a full release of the inaccurate liens recorded on April 9, 2024, and June 14, 2024, as a remedy for the claim of Slander of Title.

2. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

3. Any further relief as the Court deems just and proper.

## III. STATEMENT OF CLAIM AGAINST AARON ELLIS

1. **Jurisdiction and Procedural Preservation**.

   - **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.

   - **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

2. **Factual Background**

   - Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

   - **2019–2021:** On October 27, 2019, Silverhawk confirmed Plaintiff's rental use was allowed. Defendant Aaron Ellis ("Ellis") joined the Silverhawk Board after the lawsuit was filed (Nov 5, 2021) but supported and ratified the continuing lawsuit.

   - **2023 Concealment and False Statement:** On June 28, 2023, Ellis signed an affidavit containing unsubstantiated statements regarding nuisance allegations. During the discovery phase (2022–2023), Ellis also participated in litigation decisions and did not identify former board member Amanda Lunsford ("Lunsford") as a potential witness.

   - **2024 Trial Ambush:** On February 1, 2024, Ellis offered testimony at trial regarding the nuisance allegations that contradicted Silverhawk's earlier statements and was unsupported by the evidence produced in discovery. This testimony, combined with the undisclosed Lunsford testimony—also on February 2, 2024, which contradicted the 2019 rental approval and asserted a nuisance claim—led directly to the adverse judgment.

   - **2024 Liens and Bankruptcy Deception:** Ellis, acting as a board member, authorized and directed the recording of liens against Plaintiff's home on April 9 and June 14, 2024. These liens included inaccurate balances. Despite written notice from Plaintiff on April 26, 2024, that the figures were wrong, Ellis took part in the filing of a Bankruptcy Proof of Claim on December 13, 2024, that repeated the same erroneous figures, contributing to the financial pressure that forced Plaintiff into Bankruptcy on September 11, 2024.

3. **CAUSES OF ACTION**

   I. **Breach of Fiduciary Duty:** Ellis, as a Silverhawk Board Member, breached his duty of good faith and fair dealing by ratifying and supporting the continuation of the lawsuit despite the lack of proper due process, and by supporting litigation decisions that resulted in the withholding of key evidence and witnesses.

**II.    Constructive Fraud**: Ellis breached his duty of disclosure by concealing the identity of witness Amanda Lunsford and Ellis during discovery. This breach of duty gained an unfair advantage because Ellis knew that Lunsford's ambush testimony at trial would present testimony of nuisance and contradict Silverhawk's prior assurance by claiming the rental was not permitted, thereby destroying Plaintiff's primary defense. Ellis also knew that although he had presented in discovery that there was no evidence of nuisance, his trial testimony on February 1, 2024, would contradict that representation. Plaintiff was prejudiced in his ability to defend the lawsuit based on these.

**III.    Concealment / Suppression**: Ellis deliberately or recklessly suppressed material information by failing to disclose that Ellis and Lunsford as witnesses, and that Lunsford intended to testify that Plaintiff's rental use was not permitted. This active concealment was done with the intent that Plaintiff would rely on the implied representation that discovery was complete and on the belief that the 2019 rental approval remained uncontested and there was no evidence supporting the nuisance claim against Plaintiff. Plaintiff acted in reliance upon the completeness of discovery, which prevented him from preparing a defense for trial.

**IV.    Fraudulent/False Misrepresentation:** The withholding of the identity of witnesses Lunsford and Ellis until trial constitutes a material misrepresentation of fact regarding the completeness of discovery and the foundation of the lawsuit. Ellis knew or should have known that by concealing these witnesses, Silverhawk was relying on a pretense of procedural fairness. Plaintiff reasonably relied on the implied representation that discovery was complete.

**V.    Slander of Title:** Defendant Ellis, acting as a Board Member, authorized and directed the publication of false statements disparaging Plaintiff's property title by causing the recording of liens on April 9 and June 14, 2024. These liens contained inaccurate balances, which Silverhawk relied upon in subsequent enforcement efforts.

**VI.    Gross Negligence:** Defendant Ellis acted with reckless disregard for Plaintiff's rights by ratifying and continuing to pursue the lawsuit even though he knew or should have known that Silverhawk had previously confirmed Plaintiff's rental use and that the lawsuit was initiated without providing Plaintiff the required due process. Ellis compounded this gross negligence by: **(a)** Disregarding the effect of a lawsuit on Plaintiff; **(b)** withholding material discovery information, specifically the identity of witness Amanda Lunsford, leading to an unfair trial ambush where Lunsford testified that Plaintiff's rental was not permitted, which directly contradicted Silverhawk's prior assurance and destroyed Plaintiff's primary defense; **(c)** signing an affidavit on June 28, 2023, that contained unsubstantiated and unreliable statements; **(d)** not disclosing his February 1, 2024, testimony to Plaintiff before trial; **(e)** failing to verify accounting records before pursuing liens; **(f)** relying on erroneous figures in the Bankruptcy Proof of Claim on December 13, 2024. This continuous pattern of reckless conduct required Plaintiff to defend a multiyear lawsuit and financial actions, resulting in the damages detailed in this Complaint.

**VII.    Abuse of Process:** Defendant Ellis utilized the judicial process—including his ratification and continuation of the lawsuit, his authorization of lien filings, and the

filing of a Bankruptcy Proof of Claim containing false amounts—not for their proper purpose, but to harass Plaintiff, pressure him to stop renting his home, and secure an unfair advantage. This improper use is demonstrated by Ellis's action in supporting the continuation of the suit despite knowing or having access to information that Silverhawk had previously confirmed Plaintiff's rental use, and the lawsuit was initiated without due process. Ellis further abused the process through subsequent financial actions by relying on unsubstantiated claims and inaccurate financial figures to pursue enforcement and foreclosure.

VIII.     **Civil Conspiracy:** Ellis acted in concert with other Silverhawk board members and attorneys to commit the torts alleged herein. Specific coordinated acts included the suppression of evidence (Lunsford) and the unauthorized reliance on unsubstantiated and undisclosed nuisance claims and inaccurate lien balances.

IX.     **Intentional Infliction of Emotional Distress (IIED):** Ellis participated in a continuous pattern of extreme and outrageous conduct, including making false statements in an affidavit, organizing the surprise testimony that contradicted the rental approval at trial, the lack of any nuisance evidence, and pursuing foreclosure based on inaccurate debts. This conduct caused Plaintiff severe emotional distress and related financial consequences, constituting the damages detailed in this Complaint.

## 4. Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Aaron Ellis)

Plaintiff respectfully requests that the Court enter judgment against Defendant Aaron Ellis in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing. These damages directly resulted from his participation in the concealment of evidence, signing a false affidavit, and the use of inaccurate debt figures.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by his extreme and outrageous conduct (IIED).

3. **Punitive Damages:** Defendant Ellis's conduct was willful, wanton, and malicious, specifically demonstrated by his: **(a)** participation in the concealment of the Lunsford ambush testimony; **(b)** signing an affidavit containing unsubstantiated statements; and **(c)** directing the filing of the inaccurate liens and using them in the Bankruptcy Proof of Claim. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact, based on the nature and extent of his involvement in the fraud and conspiracy.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, the continuing impact of the unreleased liens, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific and Equitable Relief

1. **Slander of Title / Quiet Title:** An order requiring Defendant Ellis to participate in the execution of a full release of the inaccurate liens recorded on April 9, 2024, and June 14, 2024, as a remedy for the claim of Slander of Title.

2. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

3. Any further relief as the Court deems just and proper.

### III. STATEMENT OF CLAIM AGAINST DENVER ACOSTA

**1.  Jurisdiction and Procedural Preservation**

- **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2025.

- **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

**2.  Factual Background**

- Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

- **2019–2021:** On October 27, 2019, Silverhawk confirmed Plaintiff's rental use was allowed. On February 21, 2021, Silverhawk informed Plaintiff that his rental was a violation. Defendant Denver Acosta served as a board member and participated in decisions regarding enforcement. On March 23, 2021, the Association rescinded a hearing without explanation. Internal board communications reflect that Acosta agreed with other board members not to respond to Plaintiff's request for clarification.

- **2021 Misrepresentation:** On May 10, 2021, Plaintiff contacted Acosta for assistance. Acosta stated that he would help but did not disclose his prior participation in the decision to deny and rescind the March 23 hearing.

- **Suit Filed Without Due Process:** A hearing was held on July 6, 2021, but Acosta and Silverhawk failed to provide the result despite Plaintiff's written requests. Acosta supported the decision to file suit on November 5, 2021, without providing the hearing result or the appeal process described in the governing documents.

- **2022–2024:** During the discovery phase (2022 – 2023), Acosta participated in litigation decisions and did not identify former board member Amanda Lunsford ("Lunsford") as a potential witness. Lunsford appeared at trial on February 1, 2024, and offered unexpected testimony not only regarding a nuisance claim but also contradicting her 2019 rental approval on which Plaintiff relied, for which Plaintiff had not been allowed to prepare.

**3.  CAUSES OF ACTION**

    **I.**   **Breach of Fiduciary Duty**: As a Silverhawk Board Member, Defendant Acosta owed Plaintiff a duty of good faith and fair dealing. Acosta breached this duty by: **a)** Agreeing not to respond to Plaintiff's March 2021 inquiry; **b)** Supporting the decision to file suit on November 5, 2021, without first providing the July 6, 2021, hearing

result or the opportunity for an appeal; and **c)** Participating in litigation decisions that resulted in the withholding of key evidence and witnesses.

**II.     Constructive Fraud:** Defendant breached his duty of disclosure by: **(a)** Making a misleading and contradictory statement on May 10, 2021, by promising assistance without disclosing his prior participation in the decision to deny Plaintiff's hearing; and **(b)** Failing to correct the incomplete nature of discovery responses between 2022 – 2023 by concealing the identity and contradictory testimony of witness Amanda Lunsford, which directly undermined the 2019 rental approval that formed Plaintiff's primary defense. As well as the absence of any nuisance evidence. Plaintiff relied on the accuracy and completeness of the information provided by Acosta. Acosta's breach of duty gained an unfair advantage because Lunsford's ambush testimony at trial contradicted Silverhawk's prior assurance that the rental was permitted, thereby undermining the Plaintiff's primary defense.

**III.    Concealment / Suppression:** Defendant Acosta, through his participation in litigation decisions, deliberately or recklessly suppressed material information by failing to disclose Amanda Lunsford and the nature of her intended testimony, specifically that she would testify that Plaintiff was a nuisance as well as contradict the 2019 rental approval on which Plaintiff was relying. This active withholding of information prevented Plaintiff from preparing for trial.

**IV.    Fraudulent/False Misrepresentation:** The actions of Acosta in withholding the identity and contradictory testimony of a key witness (Lunsford) and in making representations that discovery was complete constitute deceptive conduct and a material misrepresentation of fact. Plaintiff relied on the completeness of discovery in planning his defense, resulting in significant prejudice when undisclosed testimony that destroyed the lack of nuisance and rental approval defense was presented at trial.

**V.     Gross Negligence:** As a Board Member, Acosta owed Plaintiff a duty of reasonable care in following proper procedures. Acosta's conduct, including denying the hearing result, withholding the appeal opportunity, before suing Plaintiff, and later failing to disclose a key witness whose testimony contradicted Silverhawk's prior assurance, despite knowing Plaintiff verified with Silverhawk that he could rent, constitutes a sustained failure to follow established procedures with reckless disregard for Plaintiff's rights, and the effect on Plaintiff, requiring Plaintiff to defend a multiyear lawsuit.

**VI.    Abuse of Process:** Defendant Acosta utilized the judicial process—the filing of the lawsuit itself—not for its proper purpose, but to harass Plaintiff, and secure an advantage. This improper use is demonstrated by Acosta's participation in the decision to file suit on November 5, 2021, despite knowing that the Association failed to provide the required hearing results or appeal opportunity, thereby utilizing litigation to bypass the necessary internal due process and pressure Plaintiff into stopping his rental.

**VII.   Civil Conspiracy:** Defendant Acosta acted in concert with other board members and Silverhawk's attorney to advance enforcement and litigation decisions based on incomplete or inconsistent information. Specific coordinated acts included agreeing to rescind the hearing without explanation, denying Plaintiff due process before suing

him, withholding the identity of witness Amanda Lunsford, and orchestrating Lunsford's ambush testimony that contradicted the 2019 rental approval.

**VIII.** **Intentional Infliction of Emotional Distress (IIED)**: Acosta participated in a continuous pattern of conduct, including making a misleading promise of assistance while secretly opposing Plaintiff's position, approving a lawsuit without providing due process, and orchestrating the introduction of undisclosed, contradictory testimony (Lunsford) at trial, which destroyed Plaintiff's primary defense. This conduct was extreme and outrageous, causing Plaintiff severe emotional distress.

## 4.  Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Denver Acosta)

Plaintiff respectfully requests that the Court enter judgment against Defendant Denver Acosta in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages**: Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing, all of which resulted from his participation in the procedural failures, misrepresentation, and concealment.

2. **Emotional Distress Damages**: Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by his extreme and outrageous conduct (IIED).

3. **Punitive Damages**: Defendant Acosta's conduct was willful, wanton, and malicious, specifically demonstrated by his misleading promise of assistance while secretly opposing Plaintiff's position, his approval of the lawsuit without required due process, and his participation in the concealment of the Lunsford testimony. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact, based on the nature and extent of his involvement in the fraud and conspiracy.

4. **Continuing Damages**: Plaintiff further seeks continuing damages, including ongoing lost rental income and the continuing impact of the unreleased liens, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific Relief

1. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

2. Any further relief as the Court deems just and proper.

### III. STATEMENT OF CLAIM AGAINST DEFENDANT BHUPENDER PAL

1. **Jurisdiction and Procedural Preservation**

   - **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.

   - **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

2. **Factual Background**

   - Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

   - **2019–2021:** On October 27, 2019, Silverhawk confirmed Plaintiff's rental use was allowed. Defendant Bhupender Pal ("Pal") served as a board member when Silverhawk abruptly reversed its position. Pal participated in the decision to rescind the March 9, 2021, hearing without explanation. Pal received Plaintiff's follow-up request for clarification but failed to respond or correct the procedural default. A new hearing was held on July 6, 2021, but Pal and Silverhawk failed to provide the result or the appeal process, leading to the filing of a lawsuit without proper due process.

   - **2022–2024:** Pal supported and ratified the continuing lawsuit despite the known lack of due process and prior approval of Plaintiff's rental use. During discovery (2022–2023), Pal participated in withholding the identity of witness Amanda Lunsford. Lunsford appeared at trial on February 1, 2024, and offered unexpected testimony that contradicted the 2019 rental approval and asserted a nuisance claim, for which Plaintiff had no opportunity to prepare.

   - **2024–2025:** Pal participated in approving and relying on inaccurate lien balances recorded on April 9 and June 14, 2024. Pal took part in enforcement efforts based on those same disputed balances, including attempts to execute or foreclose on Plaintiff's home and filing a Bankruptcy Proof of Claim on December 13, 2024, which repeated the erroneous figures.

3. **CAUSES OF ACTION**

   I. **Breach of Fiduciary Duty:** Defendant Pal, serving as a Silverhawk board member, breached his fiduciary duty to Plaintiff by: **(a)** participating in the decision to rescind the March 2021 hearing without explanation; **(b)** failing to provide the July 2021 hearing result or appeal opportunity before filing a lawsuit against Plaintiff; and **(c)** supporting litigation decisions that resulted in the withholding of key evidence and witnesses.

   II. **Constructive Fraud:** Pal breached his duty of disclosure by concealing the identity of witness Amanda Lunsford. Pal's breach gained an unfair advantage because he knew Lunsford's ambush testimony would contradict Silverhawk's prior assurance by

claiming the rental was not permitted, thereby destroying Plaintiff's primary defense. Plaintiff was prejudiced in his ability to defend the lawsuit.

**III.**    **Concealment / Suppression:** Pal deliberately or recklessly suppressed material information during the discovery phase (2022–2023) by failing to disclose Amanda Lunsford and her intended testimony that Plaintiff's rental use was not permitted. This active concealment was done with the intent that Plaintiff would rely on the implied representation that discovery was complete and on the belief that the 2019 rental approval remained uncontested by Lunsford.

**IV.**    **Fraudulent/False Misrepresentation:** Pal's actions in withholding the identity and contradictory testimony of Amanda Lunsford until trial constitute a material misrepresentation of fact regarding the completeness of discovery. Plaintiff relied on the implied representation that discovery was complete and procedurally fair.

**V.**    **Slander of Title:** Defendant Pal participated in and ratified the publication of false statements disparaging Plaintiff's property title by approving and relying on the inaccurate lien balances recorded on April 9 and June 14, 2024. These liens contained balances that included amounts Plaintiff had already satisfied or not owed by Plaintiff.

**VI.**    **Gross Negligence:** Gross Negligence Defendant Pal acted with reckless disregard for Plaintiff's rights by permitting the lawsuit to proceed even though he knew or should have known that Silverhawk had confirmed Plaintiff's rental use and that the lawsuit was initiated without providing Plaintiff the required due process. Pal compounded this gross negligence by: **(a)** disregarding the effect of a lawsuit on Plaintiff; **(b)** withholding material discovery information (Lunsford); **(c)** failing to verify accounting records before pursuing liens; and **(d)** relying on erroneous figures in the Bankruptcy Proof of Claim on December 13, 2024.

**VII.**    **Abuse of Process:** Pal utilized the judicial process—including his ratification and continuing the suit despite knowing **(a)** that Silverhawk had previously confirmed Plaintiff's rental use and **(b)** that the lawsuit was filed without providing Plaintiff the required hearing result or appeal opportunity. Pal compounded this abuse by later authorizing lien filings and the filing of a Bankruptcy Proof of Claim containing false amounts, all with the ulterior motive of forcing Plaintiff to stop renting and into an unavoidable foreclosure based on defective premises.

**VIII.**    **Civil Conspiracy:** Pal acted in concert with other Silverhawk board members and agents to commit the torts alleged herein. The agreement is demonstrated by Pal's omission to respond to inquiries, his participation in the decision to withhold the appeal opportunity, filing a lawsuit, and then suppression of evidence (Lunsford), and the unauthorized reliance on inaccurate lien balances.

**IX.**    **Intentional Infliction of Emotional Distress (IIED):** Pal participated in a continuous pattern of extreme and outrageous conduct by intentionally allowing procedural abuses to continue, including failing to respond to inquiries, suppressing evidence, and pursuing foreclosure based on inaccurate debts. The orchestrated ambush testimony that contradicted the rental approval was calculated to cause an adverse judgment and financial harm. This conduct caused Plaintiff severe emotional

distress and related financial consequences, constituting the damages detailed in this Complaint.

**4. Resulting Harm and Damages**

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Bhupender Pal)

Plaintiff respectfully requests that the Court enter judgment against Defendant Bhupender Pal in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing. These damages directly resulted from his participation in the procedural failures, concealment of evidence, and the use of inaccurate debt figures in foreclosure and bankruptcy attempts.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by his extreme and outrageous conduct (IIED).

3. **Punitive Damages:** Defendant Pal's conduct was willful, wanton, and malicious, specifically demonstrated by his: **(a)** failure to correct the procedural default and subsequent ratification of the lawsuit; **(b)** participation in the concealment of the Lunsford ambush testimony; and **(c)** authorizing the filing of the inaccurate liens and using them in the Bankruptcy Proof of Claim. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact, based on the nature and extent of his involvement in the fraud and conspiracy.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, the continuing impact of the unreleased liens, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific and Equitable Relief

1. **Slander of Title / Quiet Title:** An order requiring Defendant Pal to participate in the execution of a full release of the inaccurate liens recorded on April 9, 2024, and June 14, 2024, as a remedy for the claim of Slander of Title.

2. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

3. Any further relief as the Court deems just and proper.

## III. STATEMENT OF CLAIM AGAINST AMANDA LUNSFORD

1. **Jurisdiction and Procedural Preservation**

- **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.

- **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

2. **Factual Background**

- Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

- **2019:** On October 23, 2019, Plaintiff contacted Silverhawk Homeowners' Association ("Silverhawk") to confirm his rental was permitted pursuant to the Silverhawk governing document. October 27, 2019, Defendant Amanda Lunsford ("Lunsford"), acting as a Silverhawk board member, informed Plaintiff that his rental use was permitted under the governing documents. Plaintiff relied on this communication.

- **Departure and Silence:** Lunsford subsequently left the board before Silverhawk took the position that Plaintiff's rental was not permitted. Silverhawk later initiated a lawsuit against Plaintiff based on a contrary interpretation of the governing documents. Lunsford failed to contact Plaintiff to correct or clarify her earlier statement, allowing the litigation to proceed based on a known contradiction.

- **2023:** On July 21, 2023, Plaintiff contacted Lunsford to ask if she would testify regarding the 2019 communication on his behalf. Lunsford did not respond and actively concealed her agreement to testify for Silverhawk. Her identity and intended contradictory testimony were not disclosed during the discovery period (2022–2023).

- **Trial Testimony:** On February 1, 2024, Lunsford appeared at trial as an undisclosed witness and testified that Plaintiff's rental was not permitted and that his home was a nuisance. This testimony also directly contradicted her October 27, 2019, communication regarding the rental approval, a contradiction that Lunsford and Silverhawk's counsel knew would eliminate Plaintiff's primary defense at trial. This ambush came without any prior notice to Plaintiff, resulting in the adverse judgment on February 2, 2024.

3. **CAUSES OF ACTION**

I. **Breach of Fiduciary Duty**: Lunsford breached her fiduciary duty to Plaintiff on October 27, 2019, while serving as a director, by informing Plaintiff that his rental use was permitted under the governing documents. This statement was a breach of duty based on Lunford's February 1, 2024, testimony, which contradicted her October

27, 2019, representation to Plaintiff. At trial, Lunsford stated that at the time she informed Plaintiff that his rental was permitted, she did not believe it was, and she supported the lawsuit Silverhawk filed against Plaintiff. At no time before her trial testimony did Lunsford contact Plaintiff to correct her previous communication to Plaintiff. Plaintiff relied on this representation from 2019 until February 1, 2024. And it was only at the time Lunsford was on the stand that Plaintiff was aware of this contradiction, which caused prejudice to Plaintiff's case.

II.  **Constructive Fraud:** Lunsford's trial testimony contradicted what she informed Plaintiff, thereby misleading Plaintiff. Furthermore, despite Plaintiff contacting Lunsford to testify on his behalf on July 21, 2023, Lunsford ignored this and concealed her agreement to testify for Silverhawk and against Plaintiff in a hostile manner and failed to correct her prior material assurance to Plaintiff. This gained an unfair advantage for Silverhawk by misleading Plaintiff into believing his defense was complete, and Lunsford would be testifying on his behalf. However, Lunsford's undisclosed testimony on February 1, 2024, directly contradicted her October 27, 2019, representation regarding the rental approval—an ambush on the central issue of the lawsuit that prejudiced Plaintiff.

III.  **Fraudulent/False Misrepresentation**: Lunsford's omission and silence in response to Plaintiff's July 21, 2023, inquiry constituted a material misrepresentation of fact regarding her position in the case. This omission was made with the intent that Plaintiff would proceed to trial unprepared. This concealment and the resulting contradictory testimony regarding the rental approval were highly prejudicial. Plaintiff acted in reliance upon the false representation that Lunsford was not a hostile witness, resulting in the damages detailed in this Complaint.

IV.  **Civil Conspiracy:** Lunsford, acting in concert with other Silverhawk board members and agents, engaged in the tortious conduct alleged herein. This conspiracy is evidenced by her refusal to respond to Plaintiff on July 21, 2023, and her later testimony, on February 1, 2024, contradicting her prior statement to Plaintiff concerning Silverhawk's rental approval—a central issue to the action against Plaintiff. The purpose of these actions was to unfairly prejudice the Plaintiff and affect the trial's result.

V.  **Intentional Infliction of Emotional Distress (IIED):** Lunsford participated in a continuous pattern of extreme and outrageous conduct by making a definitive assurance on October 27, 2019, and then, after concealing her role, ambushing Plaintiff at trial with hostile, contradictory testimony that directly sabotaged Plaintiff's main defense (the prior rental approval). This sudden betrayal and contradiction of her prior statement was extreme and outrageous. This conduct caused Plaintiff severe emotional distress and related financial consequences, constituting the damages detailed in this Complaint

## 4. Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Amanda Lunsford)

Plaintiff respectfully requests that the Court enter judgment against Defendant Amanda Lunsford in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing, all directly flowing from the adverse judgment resulting from her concealed, contradictory testimony.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by her extreme and outrageous conduct (IIED) in orchestrating and executing the trial ambush.

3. **Punitive Damages:** Defendant Lunsford's conduct was willful, wanton, and malicious, specifically demonstrated by her participation in the concealment of her testimony and its direct contradiction of her prior assurance to Plaintiff, which destroyed Plaintiff's primary defense at trial. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact, based on the nature and extent of her fraudulent involvement.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific Relief

1. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

2. Any further relief as the Court deems just and proper.

### III. STATEMENT OF CLAIM AGAINST ANDREW WELCH

**1. Jurisdiction and Procedural Preservation**

- **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.

- **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

**2. Factual Background**

- Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

- **2019–2021:** On October 27, 2019, Silverhawk confirmed Plaintiff's rental use was allowed. Defendant Andrew Welch ("Welch") served as a board member who participated in the decision to rescind the March 9, 2021, hearing without explanation. Internal communications reflect that Welch agreed with other board members not to respond to Plaintiff's follow-up inquiry. Welch was involved in the July 6, 2021, hearing but failed to provide the result or the appeal process despite Plaintiff's written requests on October 17 and November 4, 2021. On November 5, 2021, Welch approved the filing of a lawsuit against Plaintiff.

- **2022–2024:** During discovery (2022–2023), Welch participated in litigation decisions and did not disclose the identity of former board member Amanda Lunsford. On October 3, 2022, Welch signed an affidavit representing that Silverhawk's disclosures were complete—an assertion directly contradicted at trial. Amanda Lunsford ("Lunsford") appeared as an undisclosed witness at trial on February 1, 2024, and offered testimony that contradicted the 2019 rental approval and provided testimony in support of Silverhawk's nuisance claim, thereby destroying Plaintiff's primary defenses.

**3. CAUSES OF ACTION**

   **I.**  **Breach of Fiduciary Duty:** Defendant Welch, serving as a Silverhawk board member, breached his fiduciary duty to Plaintiff by: **(a)** participating in the decision to rescind the March 2021 hearing without explanation; **(b)** failing to provide the July 6, 2021 hearing result or appeal opportunity; **(c)** approving the filing of the lawsuit without required due process; and **(d)** participating in litigation decisions that resulted in the withholding of key evidence and witnesses.

  **II.**  **Constructive Fraud:** Welch breached his duty of disclosure by concealing the identity of witness Amanda Lunsford during discovery and by signing an affidavit on October 3, 2022, asserting that Silverhawk's disclosures were complete, despite knowing this was contradicted by the non-disclosure of Lunsford. Welch's breach gained an unfair advantage to Silverhawk because he knew Lunsford's ambush

testimony would contradict Silverhawk's prior assurance by claiming the rental was not permitted, thereby destroying Plaintiff's primary defense. Plaintiff was prejudiced in his ability to defend the lawsuit.

**III.**  **Concealment / Suppression:** Welch deliberately or recklessly suppressed material information during the discovery phase by failing to disclose Amanda Lunsford and her intended testimony that Plaintiff's rental use was not permitted, as well as undisclosed testimony in support of Silverhawk's nuisance claim. This active concealment was done with the intent that Plaintiff would rely on the implied representation that discovery was complete and on the belief that the 2019 rental approval remained uncontested and that there was no nuisance evidence. Plaintiff acted in reliance upon the completeness of discovery, which prevented him from preparing a defense for trial.

**IV.**  **Fraudulent/False Misrepresentation:** Welch committed a material misrepresentation of fact by failing to disclose the identity and contradictory testimony of Amanda Lunsford and by signing an affidavit on October 3, 2022, representing that Silverhawk's disclosures were complete, knowing that Lunsford's identity and testimony were withheld. Plaintiff relied on the implied representation that discovery was complete and procedurally fair.

**V.**  **Gross Negligence:** Defendant Welch acted with reckless disregard for Plaintiff's rights by approving the filing of the lawsuit even though he knew or should have known that Silverhawk had confirmed Plaintiff's rental use and that the lawsuit was initiated without providing Plaintiff the required due process. Welch compounded this gross negligence by: **(a)** disregarding the effect of a lawsuit on Plaintiff; **(b)** withholding material discovery information (Lunsford); **(c)** signing an affidavit on October 3, 2022, falsely asserting discovery was complete.

**VI.**  **Abuse of Process:** Welch utilized the judicial process—specifically his approval of filing the lawsuit—not for its proper purpose, but to harass Plaintiff, pressure Plaintiff to stop his rental, and secure an unfair advantage for Silverhawk. This improper use is demonstrated by Welch's action in initiating the suit despite knowing that **(a)** Silverhawk had previously confirmed Plaintiff's rental use and **(b)** that the lawsuit was filed without providing Plaintiff the required hearing result or appeal opportunity.

**VII.**  **Civil Conspiracy:** Welch acted in concert with other Silverhawk board members to commit the torts alleged herein. The agreement is demonstrated by Welch's participation in the initial decision to withhold the appeal opportunity and his suppression of evidence (Lunsford) during the discovery phase, which led to the ambush testimony that contradicted the rental approval.

**VIII.**  **Intentional Infliction of Emotional Distress (IIED):** Welch participated in a continuous pattern of extreme and outrageous conduct by initiating a lawsuit without due process, actively suppressing evidence (Lunsford), signing an affidavit misrepresenting discovery completeness, and orchestrating the ambush testimony that contradicted the rental approval. This conduct caused Plaintiff severe emotional distress and related financial consequences.

#### 4. Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Andrew Welch)

Plaintiff respectfully requests that the Court enter judgment against Defendant Andrew Welch in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing. These damages directly resulted from his participation in the procedural failures, concealment of evidence, and his signing of an affidavit misrepresenting discovery completeness.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by his extreme and outrageous conduct (IIED).

3. **Punitive Damages:** Defendant Welch's conduct was willful, wanton, and malicious, specifically demonstrated by his: **(a)** failure to provide the required due process (hearing result/appeal); **(b)** approving the filing of a lawsuit despite the known procedural defects; **(c)** signing a false affidavit regarding discovery completeness; and **(d)** participation in the concealment of the Lunsford ambush testimony. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact, based on the nature and extent of his involvement in the fraud and conspiracy.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, the continuing impact of the unreleased liens, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific Relief

1. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

2. Any further relief as the Court deems just and proper.

## III. STATEMENT OF CLAIM AGAINST SILVERHAWK HOMEOWNERS' ASSOCIATION, INC.

1. **Jurisdiction and Procedural Preservation**

   - **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.
   - **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

2. **Factual Background Summary**

   - Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.
   - Defendant Silverhawk Homeowners' Association ("Silverhawk") acted jointly with its attorneys and board members throughout the enforcement and litigation process.
   - **Breach of Prior Assurance:** Silverhawk confirmed Plaintiff's rental use was allowed on October 27, 2019. On February 21, 2021, Silverhawk then notifies Plaintiff that his rental is not permitted.
   - **Procedural Defects:** Silverhawk revoked a hearing in March 2021, withheld the results of a subsequent hearing (July 6, 2021), despite Plaintiff requesting (October 17 and November 4, 2021), and failed to provide the internal appeal process required by its governing documents, yet filed a lawsuit on November 5, 2021.
   - **Discovery Fraud and Ambush:** Silverhawk repeatedly represented that no nuisance evidence or witnesses would be presented. Silverhawk then ambushed Plaintiff at trial (February 1, 2024) with the undisclosed witness, former board member Amanda Lunsford ("Lunsford"). Lunsford's testimony not only addressed the alleged nuisance but also contradicted her prior assurance by testifying that Plaintiff's rental was not permitted, which prejudiced Plaintiff by destroying his primary defense.
   - **Financial Misconduct and Collection:** Silverhawk recorded two inaccurate liens on April 9 and June 14, 2024, with balances that did not reflect Plaintiff's payments, including amounts that were not yet due or were already satisfied. Silverhawk ignored multiple written requests for removal/correction. Silverhawk relied on these inaccurate liens to pursue garnishment, execution, and foreclosure efforts, compelling Plaintiff to seek bankruptcy protection on September 11, 2024.

3. **CAUSES OF ACTION**

   I. **Gross Negligence:** Silverhawk acted with reckless disregard for Plaintiff's rights by:
      i. Initiating a lawsuit despite knowing that it initially informed Plaintiff his rental was permitted.

    ii.  Initiating a lawsuit despite knowing it had failed to provide the required due process (hearing result and appeal).

    iii.  Orchestrating the ambush testimony of a witness (Lunsford) whose testimony contradicted Silverhawk's prior assurance that the rental was allowed, and the representation to Plaintiff that no evidence of nuisance existed, thereby destroying Plaintiff's primary defenses.

    iv.  Failing to verify accounting records and ignoring written notice of payment while continuing to rely on erroneous figures in foreclosure and bankruptcy attempts.

    v.  Failing to produce accounting records when Plaintiff requested them on February 18, 2025.

**II.**  **Constructive Fraud:** Silverhawk breached its duty of candor by:

    i.  Informing Plaintiff on October 27, 2019, that his rental use was permitted.

    ii.  Presenting an undisclosed witness (Lunsford) at trial who offered testimony that was inconsistent with the prior representations that Silverhawk had given Plaintiff that no nuisance evidence or testimony would be offered at trial.

    iii.  Presenting an undisclosed witness (Lunsford) at trial who offered testimony that was inconsistent with the prior representations and asserted that Plaintiff's rental was not permitted, thereby gaining an unfair advantage. Plaintiff relied on the prior approval and the completeness of discovery and was prejudiced by the ambush testimony, which led directly to the adverse judgment.

**III.**  **Fraudulent Misrepresentation:** Silverhawk committed a material misrepresentation of fact by failing to disclose the identity of witness Amanda Lunsford and her intended, contradictory testimony. Silverhawk compounded this by later taking the position at trial that a defective 2017 daycare document was not valid, despite having previously presented it as valid to Plaintiff. Plaintiff acted in reliance upon these false representations that discovery was complete and that information given to him by Silverhawk was valid.

**IV.**  **Concealment / Suppression:** Silverhawk deliberately suppressed material information during discovery (2022–2023) by failing to disclose Amanda Lunsford as a witness and concealing her intended testimony that Plaintiff's rental use was not permitted and was a nuisance. This active concealment was done with the intent that Plaintiff would rely on the implied representations that discovery was complete and on the belief that Lunsford would testify favorably based on her prior October 27, 2019, statement to Plaintiff.

**V.**  **Slander of Title:** Silverhawk directed the recording of two liens on April 9 and June 14, 2024, that contained false statements about the amounts owed. The April 9 lien was recorded before the judgment had come due, and the June 14 lien was inaccurate. Both liens remained on record and were used for enforcement after Silverhawk received written notice of their falsity. By recording, maintaining, and continuing to use the inaccurate liens, Silverhawk published false statements that create a cloud on Plaintiff's title.

**VI.**    **Quiet Title**: Plaintiff is the rightful owner of the property. Two instruments recorded by Silverhawk—the liens recorded on April 9, 2024, and June 14, 2024—cloud Plaintiff's title. These liens assert debt amounts that were inaccurate, inflated, or not supported by a final court order. The continued presence of these liens in the county records affects Plaintiff's ability to refinance, convey, or otherwise use the property. Plaintiff seeks a judicial determination that these liens are invalid and an order directing the removal of these instruments from the land records.

**VII.**    **Failure to Allow Review of Corporate Books and Records**: Plaintiff, as a member of Silverhawk, had a statutory and contractual right to review the Association's books and records under the Silverhawk Amended Declarations. Plaintiff made a written request on February 18, 2025, for a proper purpose, specifically to verify the accuracy of assessments, attorney fee charges, and lien balances. Silverhawk received the request but did not produce the records or offer any accommodation for inspection.

**VIII.**    **Breach of Contract**: Plaintiff's property is subject to Silverhawk's Amended Declarations, Bylaws, and Rules & Regulations. Silverhawk breached these governing documents by:

   i.    Recording liens on April 9 and June 14, 2024, that included amounts not assessed in accordance with procedural requirements and balances that did not match Plaintiff's actual account history.

   ii.    Failing to provide the requested accounting or respond to written requests for correction or release of the inaccurate liens.

   iii.    Denying Plaintiff access to the Association's books and records.

**IX.**    **Abuse of Process**: Silverhawk utilized the judicial process—specifically its direction of execution and foreclosure efforts and its filing of a Bankruptcy Proof of Claim containing false amounts—not for their proper purpose of dispute resolution or accurate debt collection, but to harass Plaintiff and to secure an improper financial advantage. This improper use is demonstrated by Silverhawk's reliance on inaccurate financial figures and its ignoring of written notice of payment errors, with the ultimate motive of forcing Plaintiff into an unavoidable foreclosure. This improper use is further demonstrated by Silverhawk's decision in initiating and continuing the suit despite knowing that Silverhawk had previously confirmed Plaintiff's rental use and that the lawsuit was filed without providing the required due process. The filing of the suit was not for its proper purpose, but to harass Plaintiff, pressure him to stop renting his home.

**X.**    **Civil Conspiracy**: Silverhawk acted in concert with its attorneys and board members to commit the torts alleged herein. The agreement is demonstrated by the collective decision to: **(a)** initiate the lawsuit without due process; **(b)** suppress evidence and orchestrate the ambush testimony that contradicted a prior official assurance; and **(c)** coordinate the continued use of inaccurate lien balances in multiple courts to pursue foreclosure. These torts resulted in the financial and emotional damages detailed in this Complaint.

**XI.**    **Intentional Infliction of Emotional Distress (IIED)**: Silverhawk participated in a continuous pattern of extreme and outrageous conduct, including: initiating a lawsuit

without due process; actively suppressing evidence (Lunsford); orchestrating the ambush testimony that the rental was not permitted (contradicting prior assurance); and continuing to pursue foreclosure based on inaccurate debts and fraudulent claims even after being notified in writing of the errors. This conduct caused Plaintiff severe emotional distress, culminating in the need to file for bankruptcy protection.

## 4.  Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Silverhawk Homeowners' Association)

Plaintiff respectfully requests that the Court enter judgment against Defendant Silverhawk Homeowners' Association, Inc. in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the necessity of filing bankruptcy, as well as the ongoing impact of the unreleased liens on Plaintiff's property rights and financial stability.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage.

3. **Punitive Damages:** Defendants' conduct occurred over multiple years, was coordinated among several individuals, and caused continuing harm to Plaintiff's home, finances, and personal well-being. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact, based on the nature and extent of Silverhawk's willful and malicious involvement as established at trial.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, the continuing impact of the April 9, 2024, and June 14, 2024, liens that remain unreleased, and the continuing impact on Plaintiff's credit score and financial reputation caused by the necessity of filing bankruptcy.

### B. Specific and Equitable Relief

1. **Declaratory Judgment:** A declaration from the Court that the Association's subsequent post-judgement enforcement actions violated its own governing documents and the duty of good faith and fair dealing owed to Plaintiff.

2. **Quieting Title / Specific Performance (Lien Relief):** An order from the Court Quieting Title to Plaintiff's property and requiring Defendant Silverhawk to immediately execute a full release of the liens recorded on April 9, 2024, and June 14, 2024, in the county land records, as relief for the Breach of Contract (Improper Lien) and Slander of Title claims.

3. **Mandatory Injunction (Books and Records):** An order from the Court compelling Defendant Silverhawk to allow Plaintiff immediate and reasonable access to inspect and copy all Association books, records, and financial documents.

4. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

5. Any further relief as the Court deems just and proper.

### III. STATEMENT OF CLAIM AGAINST MATTHEW L. WINTON PLLC

1. **Jurisdiction and Procedural Preservation**

   - **First Filing (2024):** Plaintiff filed an action on May 13, 2024, in Oklahoma State Court. Plaintiff voluntarily dismissed that action to pursue these claims as an Adversary Proceeding in his Chapter 13 Bankruptcy in the U.S. Bankruptcy Court for the Northern District of Texas on April 10, 2024.

   - **Federal Abstention (2025):** On October 29, 2025, the Federal Bankruptcy Court granted Defendants' motion for abstention and dismissed the claims without prejudice, expressly preserving Plaintiff's right to refile. This Complaint is filed within one year of that October 29, 2025, dismissal.

2. **Factual Background**

   - Plaintiff owns the home located at 2424 NW 175th Street, Oklahoma City, Oklahoma 73012, described as Lot 12, Block 7, Silverhawk Addition Phase 1.

   - Defendant **Matthew L. Winton PLLC** ("Winton PLLC") is the law firm that represented the Silverhawk Homeowners Association ("Silverhawk") in the enforcement and litigation against Plaintiff. The firm, through the actions of its principal, Matthew L. Winton and Matt Adam Thomas, engaged in the following conduct:

     o **Attorney's Knowledge and Defective Documents:** On March 24, 2017, Winton PLLC, through its agent, prepared and recorded a document in the county land records stating that in-home daycares were permitted, knowing or having reason to know this document had not been adopted through Silverhawk's required procedures.

     o **2021 Procedural Defects:** Winton PLLC, through its agents, participated in the July 6, 2021, hearing and was informed by Plaintiff that his rental use had previously been confirmed as permitted. Despite the absence of a hearing result or internal appeal process, Winton PLLC approved the filing of a lawsuit against Plaintiff in November 5, 2021.

     o **Discovery Misconduct:** During discovery (2022–2023), Winton PLLC, through its agent, failed to disclose the identity of Amanda Lunsford as a witness. This non-disclosure led to Lunsford's ambush testimony at trial (Feb 1, 2024), where she testified that Plaintiff's rental was not permitted and that the home was a nuisance, which Plaintiff had no opportunity to anticipate or prepare for.

     o **Financial Misconduct:** Winton PLLC relied on lien balances recorded on April 9 and June 14, 2024, that were inaccurate and included amounts Plaintiff had already paid. Winton PLLC was notified by Plaintiff in writing on April 26, 2024, that the balances were incorrect. Despite this direct notice, the firm ignored the request and participated in enforcement actions on August 16 and September 9, 2024, to execute or foreclose on the home. Winton PLLC also

participated in the filing of a Bankruptcy Proof of Claim on December 13, 2024, using the same inaccurate balances.

## 3. CAUSES OF ACTION

I. **Gross Negligence:** Defendant Matthew L. Winton PLLC acted with reckless disregard for Plaintiff's rights by initiating and prosecuting the lawsuit despite knowing or having access to information that Silverhawk had failed to provide the required due process. The firm compounded this gross negligence by: **(a)** Preparing and recording a defective document in the land records in 2017, and allowing Silverhawk to represent to Plaintiff that the document was valid; **(b)** Approving the lawsuit despite the failure to provide Plaintiff the required due process; **(c)** Disregarding the effect of a lawsuit on Plaintiff, despite knowing that Plaintiff verified with Silverhawk that his rental was permitted; **(d)** Withholding material discovery information (Lunsford) leading to an unfair trial ambush where Lunsford testified that Plaintiff's rental was not permitted and was a nuisance, directly contradicting her prior assurance and destroying Plaintiff's primary defense; **(e)** using and relying upon a defective document (2017 daycare document) to prosecute the case; and **(f)** failing to verify accounting records and ignoring written notice (Jan 21, 2025) of payment, while continuing to rely on erroneous figures in the Bankruptcy Proof of Claim and foreclosure attempts.

II. **Constructive Fraud:** Defendant Matthew L. Winton PLLC, acting as counsel for Silverhawk, breached its duty of professional candor and good faith by representing to Plaintiff, through discovery responses, that no nuisance evidence or witnesses existed, while simultaneously arranging for the surprise hostile testimony of Amanda Lunsford ("Lunsford") at trial on February 1, 2024. This breach gained an unfair advantage for Silverhawk because the firm knew Lunsford's testimony would contradict her 2019 assurance by claiming the rental was not permitted and asserting a nuisance claim, thereby destroying Plaintiff's primary defense without opportunity for preparation. Plaintiff relied on the completeness of discovery and was prejudiced by the ambush testimony, which led directly to the adverse judgment.

III. **Fraudulent/False Misrepresentation:** Defendant Matthew L. Winton PLLC committed a material misrepresentation of fact by failing to disclose the identity of witness Amanda Lunsford, whose intended testimony that Plaintiff's rental was not permitted and was a nuisance were the most material fact concealed during discovery. This omission and silence were done with the intent that Plaintiff would proceed to trial unprepared. Plaintiff acted in reliance upon the false representation that discovery was complete and accurate, resulting in the damages detailed in this Complaint.

IV. **Concealment / Suppression:** Defendant Matthew L. Winton PLLC deliberately or recklessly suppressed material information by failing to disclose Amanda Lunsford and her intended testimony that Plaintiff's rental use was not permitted and was a nuisance during the discovery phase (2022–2023). This active concealment was done with the intent that Plaintiff would rely on the implied representation that discovery was complete and on the belief that Lunsford would testify favorably based on her prior statement. Plaintiff acted in reliance upon the completeness of discovery, which

prevented him from preparing a defense for trial against this core factual contradiction.

**V.    Slander of Title** Defendant Winton PLLC, in his capacity as the law firm for Silverhawk, caused the publication of false statements disparaging Plaintiff's property title by directing the recording of liens on April 9 and June 14, 2024. These liens contained inaccurate balances, which Winton PLLC later relied upon in subsequent enforcement efforts, including a writ of execution, initiating foreclosure proceedings against Plaintiff's home on or about August 16 and September 9, 2024, and the filing of the Bankruptcy Proof of Claim on December 13, 2024. The recording of these inaccurate liens constituted a false and malicious publication that caused financial damages to Plaintiff, including defending the related foreclosure and bankruptcy claims.

**VI.    Violation of the Fair Debt Collection Practices Act (FDCPA):** Plaintiff is a consumer, and the debt at issue arises from amounts claimed by Silverhawk Homeowners Association ("Silverhawk"). Defendant Winton PLLC acted as a debt collector on behalf of Silverhawk. Winton PLLC violated the FDCPA by using unfair and deceptive means to collect the alleged debt: **(a) False or Misleading Representations:** Winton PLLC relied on lien balances that were inaccurate and included amounts Plaintiff had already paid. On April 23, 2024, Winton PLLC attempted to garnish Plaintiff's bank account for debt Plaintiff had already satisfied; **(1)** on April 9 and June 13, 2024, Winton PLLC filed a lien against Plaintiff's property based on debt that was not owed or had been satisfied. **(2)** On August 16 Winton PLLC got an ex-parte writ of execution and on September 9, 2024, initiated foreclosure proceedings against Plaintiff's home; **(3)** Winton PLLC also authorized the filing of a proof of claim on December 13, 2024, in Plaintiff's bankruptcy using the same erroneous figures; **b) Unfair Practices:** Winton PLLC continued to use and rely upon the inaccurate liens after receiving written notice from Plaintiff on April 26, 2024, and January 21, 2025, detailing the error, and refusing to remove them.

**VII.    Abuse of Process:** Winton PLLC utilized the judicial process—the filing of the lawsuit itself—not for its proper purpose, but to harass Plaintiff and secure an advantage for its client—Silverhawk. This improper use is demonstrated by Winton PLLC's participation in the decision to file suit on November 5, 2021, despite knowing that the Association failed to provide the required hearing results or appeal opportunity, thereby utilizing litigation to bypass the necessary internal due process and pressure Plaintiff into stopping his rental, his direction of execution and foreclosure efforts (Aug 16, Sept 9, 2024) and his filing of a Bankruptcy Proof of Claim (Dec 13, 2024) containing false amounts. This improper use is further demonstrated by Winton PLLC's reliance on inaccurate financial figures and its ignoring of written notice of payment errors, with the ultimate motive of forcing Plaintiff into an unavoidable foreclosure.

**VIII.    Civil Conspiracy:** Winton PLLC acted in concert with Silverhawk board members and agents to commit the torts alleged herein. The agreement is demonstrated by the firm's participation in the initial decision to file suit without a hearing result, the suppression of evidence (Lunsford) during discovery, and the coordinated effort to ambush Plaintiff at trial with Lunsford's undisclosed, contradictory testimony that the

rental was not permitted and was a nuisance, which was the central issue of the lawsuit, and the coordinated effort to rely on inaccurate lien balances in multiple courts to pursue foreclosure.

IX.  **Intentional Infliction of Emotional Distress (IIED):** Winton PLLC participated in a continuous pattern of extreme and outrageous conduct by initiating a lawsuit without due process, actively suppressing evidence (Lunsford), and orchestrating the ambush testimony that the rental was not permitted (contradicting prior assurance), and continuing to pursue foreclosure based on inaccurate debts and fraudulent claims even after being notified in writing of the errors. This conduct caused Plaintiff severe emotional distress and related financial consequences, constituting the damages detailed in this Complaint.

## 4.  Resulting Harm and Damages

As a direct result of the Defendant's actions described above, Plaintiff suffered substantial harm. These harms include:

- **Pecuniary Losses:** The actions contributed to the adverse judgment entered against Plaintiff on February 2, 2024, and to the continued use of inaccurate or incomplete information in post-judgment enforcement, which created financial pressure that contributed to Plaintiff filing for Chapter 13 bankruptcy on September 11, 2024. The enforcement of the judgment and related proceedings also caused negative credit reporting that reduced Plaintiff's credit score and affected his financial stability.

- **Non-Pecuniary Losses:** emotional distress, anxiety, and loss of sleep related to the ongoing uncertainty about Plaintiff's home, financial standing, and creditworthiness following the enforcement of the February 2, 2024, judgment.

## IV. RELIEF (Against Matthew L. Winton PLLC)

Plaintiff respectfully requests that the Court enter judgment against Defendant Matthew L. Winton PLLC, in excess of $75,000 for the following:

### A. General Damages

1. **Actual Damages:** Plaintiff seeks actual damages in an amount to be proven at trial, including financial losses, lost rental income, litigation-related expenses, bankruptcy-related costs, and the severe, continuing impact on Plaintiff's credit score and financial reputation caused by the bankruptcy filing. These damages resulted from his actions in approving the defective lawsuit, concealing evidence, and pursuing false debt claims.

2. **Emotional Distress Damages:** Plaintiff seeks emotional distress damages in an amount according to proof, including multi-year anxiety, sleeplessness, the prolonged fear associated with foreclosure attempts, the necessity of filing for bankruptcy protection, and the continuing emotional strain resulting from severe credit damage caused by his extreme and outrageous conduct (IIED).

3. **Punitive Damages:** Defendant's conduct was willful, wanton, and malicious, specifically demonstrated by: **(a)** concealing Lunsford's contradictory testimony; **(b)** utilizing defective documents in the land records; and **(c)** pursuing foreclosure based on inaccurate debts and fraudulent claims even after being notified in writing of the errors. Plaintiff therefore seeks punitive and exemplary damages in an amount to be determined by the trier of fact.

4. **Continuing Damages:** Plaintiff further seeks continuing damages, including ongoing lost rental income, the continuing impact of the unreleased liens, and the long-term financial impact and loss of opportunities resulting from Plaintiff's damaged credit score.

### B. Specific and Statutory Relief

1. **FDCPA Statutory Damages:** An award of Statutory Damages of $1,000 per violation for violations of the Fair Debt Collection Practices Act (15 U.S.C. § 1692e and § 1692f).

2. **FDCPA Attorneys' Fees:** An award of attorneys' fees and costs incurred in pursuing the FDCPA claims, as authorized by 15 U.S.C. § 1692k.

3. **Quieting Title / Slander of Title:** An order Quieting Title to Plaintiff's property and requiring Defendant to participate in the execution of a full release of the inaccurate liens recorded on April 9, 2024, and June 14, 2024, as a remedy for the claims of Slander of Title and Abuse of Process.

4. **Costs of Suit:** An award of all costs incurred in bringing and prosecuting this action.

5. Any further relief as the Court deems just and proper.