## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

ADEWALE ENIOLA TAWOSE,            )
                                 )
            Plaintiff,           )
v.                               )        Case No. CIV-25-1421-R
                                 )
MATTHEW L. WINTON, et al.,       )
                                 )
            Defendants.          )

## ORDER

This matter comes before the Court upon several motions to dismiss. Defendants Brian Phillip Bowman, Aaron Ellis, Mark Richard Grant, and Silverhawk Homeowners Association filed a Motion to Dismiss [Doc. No. 10] to which Plaintiff Adewale Eniola Tawose responded [Doc. No. 17]. Defendant Bhupender Pal filed a Motion to Dismiss [Doc. No. 13] and Plaintiff responded [Doc. No. 19]. Defendants Matthew L. Winton PLLC, Matt Adams Thomas, and Matthew L. Winton also filed a Motion to Dismiss [Doc. No. 8]. Plaintiff responded [Doc. No. 18] and the Defendants replied [Doc. No. 23]. Finally, Defendant Andrew Welch filed a Motion to Dismiss [Doc. No. 15] and Plaintiff responded [Doc. No. 20].

After responding to each of the Motions to Dismiss, Plaintiff filed an Amended Complaint [Doc. No. 22]. Defendants Matthew L. Winton, PLLC, Matt Adams Thomas, and Matthew L. Winton filed a Motion to Strike the Amended Complaint [Doc. No. 24].

Pursuant to its inherent authority to manage its own dockets, the Court finds that the Amended Complaint should be stricken for failure to comply with Federal Rule of Civil

Procedure 8. Thus, the Original Complaint [Doc. No. 1] remains the operative pleading and the Court will rule upon the four pending Motions to Dismiss, which are now at issue.

## BACKGROUND

This is the fourth action[1] arising from the following factual background: Plaintiff owns a home in the Silverhawk Neighborhood in Oklahoma City [Compl. at p. 28]. Board Members of Silverhawk Homeowners' Association include or included Defendants Mark Richard Grant, Brian Phillip Bowman, Aaron Ellis, Denver Acosta, Bhupender Pal, Amanda Lunsford, and Andrew Welch ("the Silverhawk Defendants"). *Id.* at pp. 38, 42, 46, 50, 54, 58, 62. Defendants Matthew Winton and Matt Adam Thomas are attorneys at Matthew L. Winton, PLLC ("the Winton Defendants"), which represented Silverhawk HOA in the below-detailed enforcement and litigation actions against Plaintiff. *Id.* at pp. 28, 33, 71.

In or around 2019, Plaintiff asked the Silverhawk Board whether Silverhawk residents were permitted to use their homes for short-term rentals. *Id.* at p. 38. Silverhawk

---

[1] "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). Because of the direct relation of the three prior actions to matters currently at issue, the Court properly takes judicial notice of the following proceedings: *Silverhawk Homeowners Association, Inc. v. Adewale Eniola Tawose*, Dist. Ct. of Okla. Cnty., Okla., Case No. CJ-2021-4778, *Adewale Eniola Tawose v. Silverhawk Homeowners Association, Inc., et al.*, Dist. Ct. of Okla. Cnty., Okla., Case No. CJ-2024-3118, and *Adewale Eniola Tawose v. Silverhawk Homeowners Association, Inc.*, U.S. Bankr. Ct., N.D. Tex., Fort Worth Div., Case No. 25-04043-elm. The Court will also take judicial notice of the related proceedings in *In re Adewale Eniola Tawose*, U.S. Bankr. Ct., N.D. Tex., Case No. 24-43275-elm13.

allegedly approved Plaintiff's rental use in 2019. *Id.* at p. 42. In 2021, however, Silverhawk Board Members informed Plaintiff that using his home as a short-term rental property was unacceptable. *Id.* at p. 50. A March 9, 2021, HOA hearing was scheduled on the issue of Plaintiff's use of his property, but the Board "rescinded" the hearing without explanation. *Id.* at p. 54. A new hearing was held on July 6, 2021, but the Board failed to provide the results of the hearing or to afford Plaintiff an opportunity to appeal its decision. *Id.*

In November of 2021, Silverhawk filed a breach of contract action against Plaintiff ("Tawose I"). *Silverhawk Homeowners Association, Inc. v. Tawose*, Dist. Ct. of Okla. Cnty., Okla., Case No. CJ-2021-4778. A bench trial was held and Silverhawk prevailed after the court found Plaintiff's property use was both a nuisance and a violation of the HOA's rules [Doc. No. 15-1]. After judgment was entered in Tawose I, Plaintiff filed an action against Silverhawk, its Board Members, and the Winton Defendants in May of 2024 ("Tawose II") [Doc. No. 15-2]. *Tawose v. Silverhawk Homeowners Association, et al.*, Dist. Ct. of Okla. Cnty., Okla., Case No. CJ-2024-3118. Plaintiff asserted claims such as constructive fraud, gross negligence, and breach of fiduciary duty against the Tawose II Defendants, all related to the underlying dispute over the use of his Silverhawk Property for short-term rentals. Doc. No. 15-2.

In September of 2024, Plaintiff filed a bankruptcy proceeding in Texas, triggering an automatic stay under the Bankruptcy Code and temporarily halting proceedings in Tawose II. Doc. No. 15 at p. 3; *In re Adewale Eniola Tawose*, U.S. Bankr. Ct., N.D. Tex., Fort Worth Div., Case No. 24-43275-elm13. In January of 2025, the stay was lifted, allowing proceedings in Tawose II to resume [Doc. No. 15-6]. Doc. No. 15 at p. 3. Plaintiff

then filed an adversary proceeding ("Tawose III") in his bankruptcy action, reasserting claims similar to those in Tawose II against the Silverhawk and Winton Defendants [Doc. No. 15-9]. *Adewale Eniola Tawose v. Silverhawk Homeowners Association, Inc.*, U.S. Bankr. Ct., N.D. Tex., Fort Worth Div., Case No. 25-04043-elm. In April of 2025, Plaintiff voluntarily dismissed all claims against the Tawose II Defendants [Doc. No. 15-10]. In October of 2025, Tawose III was dismissed on abstention grounds [Doc. No. 15-11].

Plaintiff commenced this action ("Tawose IV") in November of 2025, asserting claims against the Defendants, who have moved to dismiss the Complaint for various reasons.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper when a complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while the Court "must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still 'must nudge the claim across the line from conceivable or speculative to plausible.'" *Id.* (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). "Mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Of course, in evaluating a complaint, all well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007). And where, as here, a litigant is proceeding pro se, the "pleadings are to be construed liberally." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.* "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

## DISCUSSION

### I.    The Amended Complaint Is Stricken for Failure to Comply with Rule 8.

Plaintiff filed his Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a). Doc. No. 22. However, Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement "establishes a ceiling (the complaint must be *no more than* 'a short and plain statement') and not a floor (the complaint must *at least* be a 'short and plain statement')." *Toevs v. Reid*, 267 Fed. App'x 817, 818-19 (10th Cir. 2008) (unpublished) (citation and internal quotation marks omitted). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (citation and internal quotation marks omitted). Indeed, a complaint

is "an improper and impermissible place for the tedious and burdensome aggregation of prospective evidence, for the rehearsal of tendentious arguments, or for the protracted recitation and explanation of legal authority putatively supporting the pleader's claim for relief." *Trump v. New York Times Co.*, 800 F. Supp. 3d 1297, 1298 (M.D. Fla. 2025). Rather, a complaint is "a mechanism to fairly, precisely, directly, soberly, and economically inform the defendants . . . of the nature and content of the claims." *Id.* at 1299.

"[F]ederal district courts have the inherent power to manage their business 'so as to achieve the orderly and expeditious disposition of cases.'" *LaFleur v. Teen Help*, 342 F.3d 1145, 1149 (10th Cir. 2003) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)); *see also United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010) (citations omitted). Pursuant to its inherent power to manage its own docket, the Court finds Plaintiff's 111-paged Amended Complaint [Doc. No. 22] is needlessly prolix, repetitive, and includes a level of evidentiary detail that is unnecessary at this stage. It fails to provide a short and plain statement of the claim as required by Rule 8 and is therefore STRICKEN. Defendant's Motion to Strike the Amended Complaint [Doc. No. 24] is therefore DENIED as MOOT.

## II.    Defendants' Motions to Dismiss

Having stricken the Amended Complaint for failure to comply with Rule 8, the Court now turns to Defendants' Motions to Dismiss the Original Complaint, which remains the current operative pleading in this action.

**A. The Silverhawk Defendants' Motions to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction**

The Silverhawk Defendants[2] have filed Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(5) (insufficient service of process) and 12(b)(2) (lack of personal jurisdiction). Doc. Nos. 10, 13. Each of these Defendants argue they were served with a copy of the Complaint but not a summons.

"A summons must be served with a copy of the complaint." FED. R. CIV. P. 4(c)(1). "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as a defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)) ("'Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'"). "If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice . . . or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." FED. R. CIV. P. 4(m).

Though Plaintiff does not concede any insufficiency of service, he requests that if the Court find a deficiency in service, it should quash service and give him an opportunity to re-serve the Defendants. "[W]hen a court finds that service is insufficient but curable, it

---

[2] Those moving for dismissal pursuant to Rules 12(b)(5) and (12)(b)(2) are: Brian Phillip Bowman, Aaron Ellis, Mark Richard Grant, Silverhawk Homeowners' Association, and Bhupender Pal.

generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983).

In his Responses, Plaintiff asserts he engaged the Oklahoma County Sheriff's Office for service and that the Sheriff's Office submitted executed returns reflecting service on the Silverhawk Defendants. Seemingly relying on those returns, Plaintiff filed proofs of service for the Defendants with this Court in December [Doc. Nos. 4, 5]. He also represents the Sheriff's Office told him it would re-attempt service without additional fees. Indeed, after Defendants filed their Motions to Dismiss, Plaintiff re-attempted service through the Sheriff's Office and once again filed proofs of service for the Defendants [Doc. No. 25].

The Court hereby QUASHES Plaintiff's initial service attempt.[3] Accordingly, Defendant's Motions to Dismiss [Doc. Nos. 10, 13] are DENIED. Defendants shall have fourteen days from the date of this Order to, if appropriate, SHOW CAUSE why Plaintiff's second attempt at service was deficient. Otherwise, the Court will rely upon the proofs of service on record indicating Plaintiff effected service upon Defendants. *See* Doc. No. 25.[4]

---

[3] *See D'Alessandro v. Carter*, No. 3:23cv21444/TKW/ZCB, 2024 WL 2278828, at *2 (N.D. Fla. Apr. 25, 2024) ("[F]ailure to perfect service was not Plaintiff's fault. Plaintiff requested and paid the [United States Marshals Service] to serve on his behalf. Yet the USMS did not serve process in a manner provided for by the law. Nevertheless, the summons was returned 'executed' and an answer date for Defendant Lowery was placed on the docket. . . . Plaintiff, who is not a trained lawyer, likely relied on the executed summons by the USMS and believed Defendant Lowery had been properly served. Moreover, nothing indicates that Defendant Lowery cannot be properly served. And Defendant Lowery has not demonstrated that he will be prejudiced if the Court quashes service of the summons instead of dismissing the complaint. Accordingly, the Court should quash service . . . .").

[4] Plaintiff contends Defendants have improperly been serving documents upon him via email, to which he has not consented. *See* FED. R. CIV. P. 5. Though the Court makes no

**B.  The Winton Defendants' Motion to Dismiss for Failure to State a Claim**

Plaintiff asserts various claims against the Winton Defendants, who move to dismiss each for failure to state a claim. First, Plaintiff asserts claims for gross negligence, alleging the Winton Defendants acted with disregard for his rights by (1) recording a defective document in land records, (2) approving the Tawose I lawsuit despite failing to provide Plaintiff with preliminary due process,[5] (3) disregarding the effect of the lawsuit on Plaintiff, (4) withholding discovery information from Plaintiff (in particular, that Silverhawk Board Member Amanda Lunsford would testify against him in the Tawose I trial), and (5) relying on erroneous figures in foreclosure and bankruptcy proceedings.

"Pursuant to OKLA. STAT. tit. 25, § 6, 'gross negligence [consists] in the want of slight care and diligence.' Gross negligence requires '[t]he intentional failure to perform a manifest duty in reckless disregard of the consequences or in callous indifference to the life, liberty or property of another. . . .'" *Austbo v. Greenbriar Nursing Home No. Two, Inc.*, 2025 WL 3212535, at *9 (Okla. Nov. 18, 2025) (quoting *Fox. v. Okla. Mem'l Hosp.*, 774 P.2d 459, 461 (Okla. 1989)). To state a negligence claim under Oklahoma law, the plaintiff must allege: "1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Smith v. City of Stillwater*,

---

findings regarding Plaintiff's assertion, it anticipates Defendants will ensure their compliance with Rule 5 moving forward.

[5] Throughout his Complaint, Plaintiff mentions Defendants violated his due process by first denying him a proper hearing regarding the use of his property as a short-term rental and later by denying him (1) notice of the results of a later hearing and (2) an appeal. He does not include any more specific allegations regarding Silverhawk's hearing process.

328 P.3d 1192, 1200 (Okla. 2014) (citations omitted). A duty arises when a party "is placed in such a position with regard to another that it is obvious that if he did not use due care in his own conduct he will cause injury to the other." *Wofford v. E. State Hosp.*, 795 P.2d 516, 519 (Okla. 1990) (citation and quotation marks omitted). Generally, a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." *Id.* (citation and quotation marks omitted).

The Winton Defendants argue Plaintiff's gross negligence claims fail because he has not established they owed him a duty. "As a general rule, an attorney does not owe a legal duty to his client's adversary when acting on behalf of his client." *Allied Fin. Servs., Inc. v. Easley*, 676 F.2d 422, 422-23 (10th Cir. 1982) (citation omitted). "[A]dvocacy, even abusive advocacy, is not an independent tort that a party litigant may bring against a lawyer or his client outside the action in which the person believes the misconduct occurred." *Hutchinson v. Carter*, 33 P.3d 958, 961 (Okla. Civ. App. 2001). Plaintiff cites no authority indicating an attorney acting on behalf of his client owes a duty to an opposing party or that any such duty is breached by an attorney engaging in litigation activities on behalf of his client. *See Allied*, 676 F.2d at 423 ("[A]n attorney must be able to attempt to collect a judgment without fear of being held liable for negligent injury to the adverse party. Mr. Easley's duty of care in this situation was to his client and to the legal system, not to Allied."). Plaintiff's claims for gross negligence fail and are accordingly DISMISSED.

Next, Plaintiff brings constructive fraud and fraudulent/false misrepresentation claims against the Winton Defendants. He asserts Defendants breached their duties of

professional candor and good faith by representing they had no evidence or witnesses "while simultaneously arranging for the surprise hostile testimony of Amanda Lunsford at trial" in Tawose I. Compl. at p. 29.

Defendants argue Plaintiff has failed to satisfy Federal Rule of Civil Procedure 9(b)'s requirement for parties to state fraud claims with particularity. This standard "'does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.'" *U.S. ex rel. Polukoff v. St. Mark's Hosp.*, 895 F.3d 730, 745 (10th Cir. 2018) (quoting *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012)). *See also U.S. ex rel. Lemmon v. Envirocare of Utah, Inc.*, 614 F.3d 1163, 1172 (10th Cir. 2010) (finding plaintiffs adequately pled fraud claims through providing the "who, what, when, where and how").

The Court agrees with Defendants. Beyond his conclusory assertions that Defendants concealed the identity of a witness for trial, Plaintiff provides little other details that elevate his pleadings of fraud to the level of specificity required by Rule 9(b).

Moreover, constructive fraud "is the concealment of a material fact by one who has a duty to disclose." *Howell v. Texaco Inc.*, 112 P.3d 1154, 1161 (Okla. 2004) (citing *Varn v. Maloney*, 516 P.2d 1328, 1332 (1973)). As discussed above, Plaintiff has failed to establish the Winton Defendants owed him any legal duties pertaining to the litigation.

Finally, Plaintiff's constructive fraud/misrepresentation claims rely entirely upon the Winton Defendants' litigation-related misconduct, for which there is no civil remedy under Oklahoma law. *Patel v. OMH Med. Ctr., Inc.*, 987 P.2d 1185, 1201-02 (Okla. 1999)

11

(finding no civil remedy for plaintiff's allegations that opposing counsel committed fraud, deceit, perjury, and spoliation of evidence during an earlier, separate trial). Indeed,

> [a]ttorney misconduct may be sanctioned by the court in which the misconduct occurred. In addition, reports of alleged misconduct may be forwarded to the General Counsel's office of the Oklahoma Bar Association for investigation and appropriate action, up to and including recommendation of disbarment. But advocacy, even abusive advocacy, is not an independent tort that a party litigant may bring against a lawyer or his client outside the action in which the person believes the misconduct occurred.

*Hutchinson*, 33 P.3d at 961. Thus, even if Plaintiff had successfully alleged his fraud claims, "such misconduct may be sanctioned by the court in which the misconduct occurred." *Stricklen v. O.I.P.M., LLC*, 394 P.3d 290, 292-93 (Okla. Civ. App. 2016) (citing OKLA. STAT. tit. 12, § 2011(B)-(C)) (no civil remedy available where plaintiff claimed a false affidavit led to a wrongfully obtained default judgment in a prior action).

And to the extent Plaintiff alleges the Winton Defendants violated the Oklahoma Rules of Professional Conduct, "violation of such rules does not provide a basis for a private action in tort. Rather, the Oklahoma Supreme Court possesses original and exclusive jurisdiction to prosecute any alleged attorney rule violations." *Mahorney v. Waren*, 60 P.3d 38, 40 (Okla. Civ. App. 2002) (citing *Rules Governing Disciplinary Proceedings*, OKLA. STAT. tit. 5, Ch. 1, App. 1-A, Sec. 1.1).

Accordingly, Plaintiff's fraudulent concealment/misrepresentation claims are DISMISSED.

Plaintiff also asserts claims for "concealment/suppression" based on the same concealment of Amanda Lunsford as a witness before trial. These claims are duplicative of

Plaintiff's constructive fraud and misrepresentation claims and, for the same reasons as above, are dismissed for failure to state a claim upon which relief can be granted.

Next, Plaintiff asserts a slander of title claim against the Winton Defendants. To state a claim for slander of title, Plaintiff must allege: "1) [the] publication of a statement; 2) the published statement was false; 3) the publication was maliciously made; 4) the publication caused [him] to incur special damages resulting therefrom; and 5) [he] owns or possesses an interest in the subject property." *Bays Expl., Inc. v. PenSa, Inc.*, No. CIV-07-754-D, 2012 WL 4128120, at *19 (W.D. Okla. Sept. 18, 2012) (citing *Zehner v. Post Oak Oil Co.,* 640 P.2d 991, 994 (Okla. Civ. App. 1981)). Plaintiff argues the Winton Defendants clouded his title by filing liens on his Silverhawk Property with false statements about the amounts owed. Though his allegations are vague, Plaintiff appears to be referencing statements of judgment for the amount awarded to the Tawose I plaintiffs, which the Winton Defendants relied upon in later enforcement and bankruptcy proceedings.

Defendants argue the statements of judgment are protected by Oklahoma's litigation privilege. Oklahoma law provides:

**A.** A privileged publication or communication is one made:

**First.** In any legislative or judicial proceeding or any other proceeding authorized by law; . . .

**B.** No publication which under this section would be privileged shall be punishable as libel.

OKLA. STAT. tit. 12, § 1443.1. Oklahoma courts have adopted Section 586 of the Restatement (Second) of Torts, which provides that attorneys are "absolutely privileged to publish defamatory matter concerning another in communications preliminary to a

proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." This absolute privilege applies to slander of title actions. *Bennett v. McKibben*, 915 P.2d 400, 404 (Okla. Civ. App. 1996).

"A fair and true report of any judicial proceeding is a privileged publication. . . . The filing of a judgment is a privileged publication and cannot form the basis of a slander of title action." *Grasz v. Discover Bank ex rel. SA Discover Fin. Servs., Inc.*, 315 P.3d 406, 409 (Okla. Civ. App. 2013) (citation omitted); *see also Borison v. Bank Leumi Tr. Co. of N.Y.*, 972 P.2d 1188, 1190 (Okla. Civ. App. 1998) (bank's filing of a judgment, enforceable or not, was a privileged publication that could not form the basis for a slander of title action, even if it clouded title); *see also Morford v. Eberly & Meade, Inc.*, 879 P.2d 841, 842-43 (Okla. Civ. App. 1994) (filing of a lis pendens, which provides courts with temporary power over property involved in a suit, was "cloaked with the same privilege attaching to the issues in litigation").

Defendants filed the statements of judgment preliminary to judicial or quasi-judicial proceedings. These statements were absolutely privileged. Accordingly, Plaintiff's slander of title claims against the Winton Defendants are DISMISSED.

Plaintiff next asserts claims against the Winton Defendants for violation of the Fair Debt Collection Practices Act. 15 U.S.C. § 1692, *et seq*. Broadly stated, "the FDCPA prohibits debt collectors from (1) engaging in harassing, oppressive or abusive conduct; (2) using false, deceptive or misleading representations or means; and (3) using unfair or unconscionable means." *Dillon v. Riffel-Kuhlmann*, 574 F. Supp. 2d 1221, 1223 (D. Kan.

2008). "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

Plaintiff asserts Defendants used unfair and deceptive representations and means to collect upon the alleged debts he owed to Silverhawk. These debts appear to be HOA assessments and charges tied to the prohibited income-generating use of his property. Where the underlying debt is commercial in nature, the FDCPA does not apply. *Zsamba ex rel. Zsamba v. Cmty. Bank, Abilene, Kan.*, 63 F. Supp. 2d 1294, 1299 (D. Kan. 1999) (citing *Heintz v. Jenkins*, 514 U.S. 291, 293 (1995)). To determine whether a debt is commercial, courts generally "consider factors such as the borrower's purpose in obtaining the loan or credit; the borrower's use of the funds or of the item purchased; whether the credit was incurred in the consumer's personal capacity with his home address . . . and whether the obligation was paid from personal funds." *Goodman v. Asset Acceptance LLC*, 428 F. Supp. 3d 526, 530 (D. Colo. 2019) (citing *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992)).

The Court disagrees with Defendants' characterization of Plaintiff's debts as *clearly* commercial. Yes, the debts stem from Plaintiff's allegedly improper income-generating use of his Silverhawk Property. But those debts were assessed because Plaintiff violated Silverhawk's covenants forbidding his rental of the property—for the purposes of maintaining a *residential* neighborhood. Indeed, the Bankruptcy Court in Tawose III has already questioned the Defendants' characterization of Plaintiff's debt as clearly

commercial, noting Plaintiff's debt arose from "covenants . . . designed to prevent a residential homeowner from operating a business" [Doc. No. 18-9, at p. 6].

Defendants next argue Plaintiff is challenging conduct that is routine for judgment enforcement, not the type of abusive or deceptive collection activity the statute was designed to reach. Plaintiff relies on two sections of the FDCPA. First, he asserts violations of 15 U.S.C. § 1692e, which prohibits "any false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." He also asserts Defendants violated § 1692f, which prohibits "unfair or unconscionable means to collect or attempt to collect any debt." Specifically, Plaintiff contends the Winton Defendants (1) relied on inaccurate and disputed lien balances, (2) attempted to collect amounts Plaintiff had already paid, and (3) initiated foreclosure proceedings against Plaintiff's home.

With respect to Plaintiff's "unfair means" claim pursuant to § 1692f, the Complaint alleges nothing about the "means" in which the inaccurate amounts were used. It only states that Defendants continued to rely on the inaccurate liens even after Plaintiff disputed them. The issue is merely the representations themselves, and thus Plaintiff has failed to state a claim against the Winton Defendants pursuant to § 1692f.

With respect to Plaintiff's "misleading representations" claim pursuant to § 1692e, Plaintiff contends the debt sought by Defendants was inaccurate or not owed. As an initial matter, most of Plaintiff's claims of § 1692e violations appear barred by the statute of limitations. To enforce liability under the FDCPA, claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). "For statute-of-limitations purposes, discrete violations of the FDCPA should be analyzed on an individual

basis." *Solomon v. HSBC Mortg. Corp.*, 395 Fed. App'x 494, 497 (10th Cir. 2010) (unpublished). The only alleged § 1692e violation that occurred within one year of the date Plaintiff brought this action on November 26, 2025, is Defendants' alleged filing of a proof of claim in bankruptcy court using erroneous figures on December 13, 2024.

Section 1692e(2) prohibits the false representation of "the character, amount, or legal status of any doubt." Plaintiff has alleged Defendants relied on an inaccurate amount when engaging in enforcement proceedings on December 13, 2024—but he fails to substantiate this allegation and thus fails to state a claim under Rule 8. *See Strickland v. Aldoerffer*, No. CIV-24-00342-PRW, 2025 WL 606190, at *2 (W.D. Okla. Feb. 25, 2025) (noting plaintiff had "provide[d] scant factual allegations to substantiate [his FDCPA] claims" that opposing counsel used a misleading representation in a petition in an underlying debt collection lawsuit). Plaintiff's assertions are no more than conclusory statements that Defendants used disputed amounts when proceeding with routine enforcement proceedings. His allegations have not provided "the defendant sufficient notice to begin preparing its defense [or] the court sufficient clarity to adjudicate the merits." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Finally, the Court questions whether the FDCPA provides a remedy for wrongfully filed proofs of claim.

> "The FDCPA . . . was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997). "Debtors in bankruptcy proceedings do not need protection from abusive collection methods that are covered under the FDCPA because the claims process is highly regulated and court controlled.

> While the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers." *B-Real, LLC v. Rogers*, 405 B.R. 428, 432 (M.D. La. May 19, 2009) (footnote omitted) (internal quotation marks omitted). Thus debtors are protected in bankruptcy proceedings—and by discharge afterward. . . .
>
> Bankruptcy provides remedies for wrongfully filed proofs of claim. . . . *[S]ee also Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002) ("Nothing in either [the Bankruptcy Code or the FDCPA] persuades us that Congress intended to allow debtors to bypass the Code's remedial scheme when it enacted the FDCPA. While the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code.").

*Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 96 (2d Cir. 2010). *Compare with Midland Funding, LLC v. Johnson*, 581 U.S. 224, 235 (2017) ("[W]e conclude that filing (in a Chapter 13 bankruptcy proceeding) a proof of claim that is obviously time barred is not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the Fair Debt Collection Practices Act."). Other courts have disagreed with the Second Circuit's approach, inquiring more specifically into whether relevant provisions of the Bankruptcy Code preclude, preempt, or repeal by implication the specific FDCPA claim at issue. *See Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 273-78 (3d Cir. 2013); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Due to Plaintiff's vague allegations and the lack of briefing on this issue, however, the Court cannot conclude whether Plaintiff's non-time-barred FDCPA claim falls within the meaning of the FDCPA or is more properly cognizable in bankruptcy court. Plaintiff's FDCPA claims are therefore DISMISSED.

Next, Plaintiff claims the Winton Defendants committed abuse of process by filing Tawose I against Plaintiff by (1) not properly adhering to the HOA's internal dispute process and (2) relying on inaccurate financial figures to force Plaintiff into foreclosure. To state a claim for abuse of process, Plaintiff must plead "'(1) the improper use of the court's process (2) *primarily* for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse.'" *Schlottman v. Unit Drilling Co.*, No. CIV-08-1275-C, 2009 WL 1657988, at *2 (W.D. Okla. June 11, 2009) (quoting *Greenberg v. Wolfberg*, 890 P.2d 895, 905 (Okla. 1994)). "The key issue in any abuse of process claim is whether a party has attempted to use the legal system 'to obtain a result not lawfully warranted or properly attainable.'" *FLSmidth A/S v. Jeffco, LLC*, No. 08-CV-0215-CVE-SAJ, 2008 WL 4426992, at *6 (N.D. Okla. Sept. 25, 2008) (quoting *Neil v. Penn. Life Ins. Co.*, 474 P.2d 961, 965 (Okla. 1970)). Even if the predicate action was motivated by malicious intentions, if the predicate action was used for an authorized purpose, there is no abuse of process. *Greenberg*, 890 P.2d at 905. There "must be some 'definite *act* or *threat* not authorized by the process.'" *Gore v. Taylor*, 792 P.2d 432, 435 (Okla. Civ. App. 1990) (quoting W. Prosser, *Handbook of the Law of Torts* § 121 (4th ed. 1971)).

Even viewing Plaintiff's Complaint in the requisite favorable light, his claims fail to establish the necessary element of improper use of process. Plaintiff alleges Defendants abused process by filing the lawsuit, demonstrated by their use of improper amounts and bypass of internal due process. But "there is no liability where the process is used for its proper and intended purpose, even if it has a collateral effect of exerting pressure for collection of a debt." *Bank of Okla., N.A. v. Portis*, 942 P.2d 249, 255 (Okla. Civ. App.

19

1997) (citing *Gore*, 792 P.2d 432). The most Plaintiff has alleged is that Defendants took authorized actions during the Tawose I trial and afterward when seeking to collect on the Tawose I judgment. Defendants were merely carrying out the process to its authorized conclusion—whether they were motivated by a desire to "harass" the plaintiff has no bearing on their use of proper processes. Plaintiff has cited no persuasive argument or authority that would convince this Court otherwise. His Response provides more detailed allegations regarding Defendants' improper motives—but none of these are present on the face of the Complaint.

In any event, Plaintiff's allegations of abuse of process are akin to his claims for gross negligence and fraud—claims for litigation-related misconduct for which Oklahoma law provides no civil remedy. *See Patel*, 987 P.2d at 1201-02. This Court is not the proper forum for such complaints. Plaintiff's claims for abuse of process are DISMISSED.

Next, Plaintiff asserts claims for civil conspiracy against the Winton Defendants, arguing they acted in concert with each other and the Silverhawk Board to commit the torts Plaintiff alleges. "Under Oklahoma law, to state a claim for civil conspiracy, a plaintiff must plead the following elements: 1) a combination of two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful overt acts; and 5) damages as a proximate result thereof." *Okla. Land Holdings, LLC v. BMR II, LLC*, No. CIV-17-1036-D, 2020 WL 4284806, at *13 (W.D. Okla. July 27, 2020) (citing *Gaylord Ent. Co. v. Thompson*, 958 P.2d 128, 148 (Okla. 1998)). "*There can be no civil conspiracy where the act complained of and the means employed are lawful.*" *Gaylord*, 958 P.2d at 148 (emphasis in original).

20

Defendants first argue Plaintiff has failed to meet the *Twombly*/*Iqbal* pleading standards for this claim, and the Court agrees. Plaintiff's conspiracy allegations comprise little more than a paragraph with the conclusory allegation that the relevant Defendants "acted in concert" to pursue the lawsuit, deprive Plaintiff of pre-lawsuit due process, conceal Amanda Lunsford as a witness, ambush Plaintiff at trial, and use inaccurate lien balances in later proceedings. Plaintiff has done no more than re-state the wrongs he alleges Defendants have committed and conclusively state they are indicative of a civil conspiracy. His allegations do not meet the requirements of Rule 8.

> Moreover, the Court has already found Plaintiff's underlying tort claims fail.
>
> Unlike its criminal counterpart, civil conspiracy itself does not create liability. *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997). Rather, the gist of a civil action for conspiracy is the damages, not the conspiracy. *Clark v. Sloan*, 37 P.2d 263, 266 (Okla. 1934). It is the underlying tort which gives rise to damages and the conspiracy only enables the plaintiff to recover against the tort-feasors jointly. *Tripp v. English*, 158 P. 912, 913 (Okla. 1916). In other words, a civil conspiracy claim merely "enlarges the pool of potential defendants from whom a plaintiff may recover for an underlying tort." *Brock*, 948 P.2d at 294, n.66. Thus, in Oklahoma, in order for civil conspiracy to lie, the claim must base itself on a valid, actionable underlying tort.

*Meyer v. Town of Buffalo, Okla.*, No. CIV-02-1691-F, 2007 WL 2436302, at *5 (W.D. Okla. Aug. 22, 2007). Because the Court finds all of Plaintiff's underlying tort claims fail, Plaintiff's civil conspiracy claims are therefore DISMISSED.

Finally, Plaintiff asserts a claim for intentional infliction of emotional distress against the Winton Defendants. To plead IIED, plaintiffs must allege "'(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting

emotional distress was severe.'" *Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 175 (Okla. 2008) (quoting *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002)). Conduct must be "'so outrageous in character, and so extreme in degree, as to be beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1218 (10th Cir. 2003) (quoting *Frank v. Mayberry*, 985 P.2d 773, 776 (Okla. 1999)).

Once again, Plaintiff's Complaint contains no more than conclusory assertions of Defendants' "extreme and outrageous conduct" and Plaintiff's "severe emotional distress." Plaintiff reiterates Defendants' alleged wrongs (initiating the lawsuit, suppressing Lunsford as a witness, ambushing him at trial, using inaccurate information when pursuing foreclosure) and asserts such activity was extreme and outrageous and caused him severe distress. Such threadbare allegations do not meet the strictures of Rule 8. And even if he had met Rule 8, the Court cannot find Plaintiff has plausibly alleged Defendants' conduct was extreme and outrageous. The challenged conduct relates to Defendants' activities during Tawose I and post-judgment collection activity—these are regular litigation activities tolerated by civilized society on a daily basis. Such actions as Plaintiff alleges them do not rise to the level of extreme and outrageous conduct. Accordingly, Plaintiff's IIED claims are DISMISSED.

## C. Defendant Welch's Motion to Dismiss for Failure to State a Claim (Claim Preclusion)

Finally, the Court turns to Defendant Welch's Motion to Dismiss for failure to state a claim under the doctrine of claim preclusion. As discussed earlier in this Order, this is

the fourth case arising from the same dispute between Plaintiff and Silverhawk regarding the use of Plaintiff's Silverhawk Property. Defendant Welch was a member of the Silverhawk Board who allegedly participated in Silverhawk's internal processes regarding Plaintiff's property use and the subsequent litigation. Compl. at pp. 62-64. Defendant was dismissed from Plaintiff's Tawose II action and now asserts claim preclusion prevents Plaintiff from bringing any more claims against him related to the HOA dispute.[6]

> Claim preclusion

> requires the satisfaction of four elements: (1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the plaintiff must have had a full and fair opportunity to litigate the claim in the prior suit.

*Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000) (quoting *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997)). Defendant asserts all four elements of claim preclusion have been met.

Plaintiff does not dispute that the parties to Tawose II and this action are identical (himself and Defendant Welch). Nor does he dispute that the suits are based on the same cause of action. The Tenth Circuit uses the "transactional approach" when analyzing the "same cause of action" element of claim preclusion. *Id.* at 1169 (citation omitted). "'Under this approach, a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation.'" *Id.*

---

[6] Courts often take judicial notice of prior judicial acts when evaluating the claim-preclusion defense and may do so without transforming a defendant's motion to dismiss into a motion for summary judgment. *Johnson*, 950 F.3d at 705.

(quoting *Nwosun*, 124 F.3d at 1257). Both Tawose II and this action bring claims arising from Defendant Welch's participation as a Silverhawk Board Member in decisions related to Plaintiff's use of his Silverhawk Property and Tawose I. Under the transactional approach, then, the suits are based on the same cause of action.

Plaintiff argues (1) Defendant Welch's dismissal from Tawose II was not a final judgment on the merits and (2) he was deprived of the full and fair opportunity to litigate his claims. A summary of Tawose I and Tawose II is necessary to analyze the parties' arguments.

In Tawose I, presided over by Oklahoma County District Court Judge Stinson, Silverhawk prevailed on its claims against Plaintiff. The court found Plaintiff's use of his property was a nuisance and violated Silverhawk's covenants and enjoined Plaintiff from using his property as a short-term rental. Doc. No. 15-1. Plaintiff thereafter brought Tawose II against Silverhawk, including Defendant Welch, asserting claims for breach of fiduciary duty, civil conspiracy, constructive fraud, gross negligence, and negligent misrepresentation, each arising from Silverhawk's enforcement of its covenants. Doc. No. 15-2.

Defendant Welch filed a motion to dismiss the Tawose II claims against him pursuant to the Oklahoma Citizens Participation Act [Doc. No. 15-3], which is "designed to reduce the frequency of . . . SLAPP lawsuits. (SLAPP is an acronym for 'Strategic Lawsuit Against Public Participation.')" *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1233 (10th Cir. 2020) (quoting *Krimbill v. Talarico*, 417 P.3d 1240, 1245 (Okla. Civ. App. 2017)). "The stated purpose of [the OCPA] is to

encourage and safeguard the constitutional rights of persons to 'petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file a meritorious lawsuit for a demonstrable injury.'" *Anagnost v. Tomecek*, 390 P.3d 707, 709-10 (Okla. 2017) (quoting OKLA. STAT. tit. 12, § 1430).

Defendant filed his OCPA Motion to Dismiss the Tawose II claims against him on July 3, 2024. Doc. No. 15-3. In late July of 2024, Plaintiff submitted a letter to Judge Stinson [Doc. No. 20-3] requesting an in-camera hearing to disqualify Judge Stinson or seeking her removal from Tawose I. A hearing on those issues was held on August 9, 2024. *Id.* On August 13, 2024, Tawose II was transferred to Judge Stinson due to its relationship to Tawose I. *Tawose v. Silverhawk Homeowners Assoc.*, No. CJ-2024-3118, Transfer Order, Document #1059582077, (Okla. Dist. Ct. Aug. 13, 2024).

On September 3, 2024, Plaintiff filed a formal motion to recuse Judge Stinson from, it appears, both Tawose I and Tawose II [Doc. No. 15-4 at p. 13]. On September 4, 2024, while Plaintiff's motion to recuse was pending, a hearing was held on Defendant Welch's OCPA motion. *Id.* at p. 14. Judge Stinson granted that motion but did not sign the order dismissing Welch until February 6, 2025, due to the stay that occurred as a result of the filing of Plaintiff's bankruptcy action. *Id.* at pp. 14, 16. Prior to signing that order, however, Judge Stinson transferred both Tawose I and Tawose II to another judge on January 29, 2025. *Id.* at p. 15.

Plaintiff attempted to appeal the OCPA Dismissal Order to the Oklahoma Supreme Court but his appeal was dismissed because the order was interlocutory in nature and not

immediately appealable by right under the OCPA [Doc. No. 15-8].[7] Plaintiff subsequently dismissed his claims against all the Tawose II Defendants on April 16, 2025. Doc. No. 15-4, at pp. 23-24. He filed a motion to declare the OCPA Dismissal Order void in June of 2025. *Id.* at p. 24.

Defendant asserts that the OCPA Dismissal Order was a final judgment on the merits and is not subject to collateral attack by the Plaintiff. "A trial court's pretrial termination of a claim, such as a grant of summary judgment in favor of the defendant, constitutes a 'final submission' under OKLA. STAT. tit. 12, § 683(1), and forecloses the plaintiff's unilateral right to dismiss that particular claim without prejudice." *Guilbeau v. Durant H.M.A., LLC*, 533 P.3d 764, 769 (Okla. 2023) (citing *Brandt v. Joseph F. Gordon Architect, Inc.*, 998 P.2d 587, 592 (Okla. 1999)). "A plaintiff's dismissal of the remaining claims transforms adverse interlocutory rulings into final, appealable orders." *Id.* (citing *Vance v. Fed. Nat'l Mortg. Ass'n*, 988 P.2d 1275, 1278 (Okla. 1999)); *see also Raven Res., LLC v. Legacy Bank*, 229 P.3d 1273, 1279 (Okla. Civ. App. 2009) (voluntary dismissal of plaintiff's claims converted prior order granting the defendant's motion to dismiss into a final order). Thus, Plaintiff's voluntary dismissal of the claims on April 16, 2025, rendered the OCPA dismissal order a final appealable judgment as of that date.

---

[7] The Court notes that a dismissal pursuant to the OCPA is considered "a final order similar to a full summary judgment or directed verdict." *Sw. Orthopaedic Specialists, PLLC v. Allison*, 439 P.3d 430, 441 (Okla. Civ. App. 2018). The Oklahoma Legislature has, apparently, made the granting or denial of an OCPA motion immediately appealable. *Id.* However, as the Oklahoma Supreme Court deemed it unappealable while Tawose II was pending, the Court will proceed to calculate the time for appeal based upon the general methods used for interlocutory orders.

An appeal of a final judgment must be initiated within thirty days from the date the judgment is filed with the clerk of the trial court. OKLA. STAT. tit. 12, § 990A. The time for appeal of interlocutory rulings begins on the date of the voluntary dismissal. *Hollingshead v. Elias*, 376 P. 3d 936, 941 (Okla. Civ. App. 2015). Thus, the thirty-day appeal period for the OCPA Dismissal Order expired on May 16, 2025. Plaintiff did not renew his attempts to void the OCPA Dismissal Order until well after the thirty-day period for appeal, making the OCPA dismissal order a final judgment on the merits.

Regardless of the finality of the OCPA Dismissal Order, however, the Court finds Plaintiff has not been afforded a fair and full opportunity to litigate his claims against Defendant Welch.[8] "The fairness of the process is determined by examining any procedural limitations, the party's incentive to fully litigate the claim, and whether effective litigation was limited by the nature or relationship of the parties." *Nwosun*, 124 F.3d at 1257-58. "The 'full and fair opportunity to litigate' inquiry is a 'narrow exception' that 'applies only where the requirements of due process were not afforded—where a party shows a deficiency that would undermine the fundamental fairness of the original proceedings.'" *Johnson*, 950 F.3d at 709 (quoting *Lenox MacLaren*, 847 F.3d at 1243) (quotation marks omitted).

Plaintiff argues that because a motion to recuse was pending when Judge Stinson

---

[8] "[E]ven if the[] three elements [of claim preclusion] are satisfied, there is an exception . . . where the party resisting it did not have a 'full and fair opportunity to litigate' the claim in the prior action." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831, 831 n.6 (10th Cir. 2005)).

heard oral arguments on the OCPA motion and because she signed the OCPA Dismissal Order *after* her recusal from both Tawose I and Tawose II, Plaintiff was deprived of a fair and full opportunity to litigate.

> A challenge to an assigned judge for want of impartiality presents an issue of constitutional dimension which must be resolved and the ruling memorialized of record after a meaningful evidentiary hearing. The quest for recusal may not be ignored, nor is a judge free to proceed with the case until the challenge stands overruled of record following a judicial inquiry into the issue.

*Clark v. Bd. of Educ. of Indep. Sch. Dist. No. 89 of Okla. Cnty.*, 32 P.3d 851, 854 (Okla. 2001) (emphasis and footnotes omitted). Furthermore,

> When a Rule 15 proceeding to seek disqualification of a trial judge is initiated, the trial court must refrain from presiding over the case until the disqualification ruling is memorialized and the movant has, at the movant's option, exhausted the Rule 15 procedure. Because the trial court continued to participate while motions to disqualify were pending, the movant was deprived of due process and reversible error occurred.

*Miller Dollarhide, P.C. v. Tal*, 163 P.3d 548, 555 (Okla. 2007) (footnote omitted).

Rule 15 of the Rules for District Courts of Oklahoma states that before filing a motion to disqualify a judge, "an in camera request shall first be made to the judge to disqualify or transfer the cause to another judge." Okla. Dist. Ct. R. 15(a). "If such request is not satisfactorily resolved, . . . a motion to disqualify a judge or to transfer . . . may be filed." *Id.* Then, if the judge denies the motion, the party "may re-present his motion to the Chief Judge of the county in which the cause is pending." Okla. Dist. Ct. R. 15(b).

As discussed above, Plaintiff had already initiated the Rule 15 process against Judge Stinson when the OCPA Motion to Dismiss was heard. Plaintiff asserts he was deprived of due process due to Judge Stinson proceeding on the OCPA Motion without first ruling

28

upon his Motion to Recuse. This Court is persuaded that Plaintiff has properly alleged a denial of due process and thus denial of a fair and full opportunity to litigate his prior claims against Defendant Welch. The Court finds his assertions fall into the "narrow exception" to claim preclusion. Defendant Welch's Motion to Dismiss is therefore DENIED.

## CONCLUSION

Accordingly, Plaintiff's Amended Complaint [Doc. No. 22] is STRICKEN. The Winton Defendants' Motion to Strike the Amended Complaint [Doc. No. 24] is DENIED as MOOT. The recently filed Motions to Dismiss [Doc. Nos. 27, 28, 29, 30, 31, 32], which address the now-stricken Amended Complaint, are also DENIED as MOOT. Plaintiff shall have twenty-one days from the date of this Order to file an Amended Complaint that complies with Rule 8.[9]

The relevant Silverhawk Defendants' Motions to Dismiss [Doc. Nos. 10, 13] are DENIED. Plaintiff's initial service attempt is QUASHED. Defendants shall have fourteen days from the date of this Order to, if appropriate, SHOW CAUSE why Plaintiff's second attempt at service was deficient.

The Winton Defendants' Motion to Dismiss [Doc. No. 8] is GRANTED. Plaintiff's claims against the Winton Defendants are dismissed.

Defendant Andrew Welch's Motion to Dismiss [Doc. No. 15] is DENIED.

---

[9] The Court reminds Plaintiff that although he is a pro se litigant, he is "expected to 'follow the same rules of procedure that govern other litigants.'" *Keeler v. Aramark*, 418 Fed. App'x 787, 791 (10th Cir. 2011) (unpublished) (quoting *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)). The Court will, of course, afford Plaintiff the appropriate leniency due to his pro se status, but in the event that another Amended Complaint is filed by Plaintiff, it will not tolerate a mere restatement of the claims dismissed above.

IT IS SO ORDERED this 9th day of February, 2026.

_David L. Russell_

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**