**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ADEWALE ENIOLA TAWOSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1421-R |
| | ) | |
| MATTHEW L. WINTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court are the following Motions, each of which is now at issue:

(1) Defendant Andrew Welch's Motion to Dismiss [Doc. No. 38],

(2) Defendant Welch's Amended Motion to Dismiss [Doc. No. 44], to which Plaintiff responded [Doc. No. 46] and Welch replied [Doc. No. 49],

(3) the Motion to Strike Plaintiff's Second Amended Complaint [Doc. No. 43] filed by Defendants Matthew L. Winton PLLC, Matt Adams Thomas, and Matthew L. Winton, to which Plaintiff responded [Doc. No. 47] and the Winton Defendants did not reply,

(4) the Motion to Dismiss filed by Defendants Denver Acosta, Brian Phillip Bowman, Aaron Ellis, Mark Richard Grant, Amanda Lunsford, Bhupender Pal, and Silverhawk Homeowners Association [Doc. No. 45], to which Plaintiff responded [Doc. No. 50] and Defendants replied [Doc. No. 55],

(5) the Winton Defendants' Motion for Sanctions [Doc. No. 51], to which Plaintiff responded [Doc. No. 54] and Defendants replied [Doc. No. 56],

(6) Plaintiff's Motions to Authorize Alternative Service and to Extend the Time for Service on Defendant Denver Acosta [Doc. Nos. 53, 57], and

(7) the Winton Defendants' Objection to and Motion to Strike [Doc. No. 67] Plaintiff's Notice of Supplemental Evidence [Doc. No. 58], to which Plaintiff responded [Doc. No. 68].

1

**BACKGROUND**

This is the fourth action[1] arising from the following factual background: Plaintiff owns a home in the Silverhawk Neighborhood in Oklahoma City [Am. Compl., Doc. No. 42, at p. 1 & ¶ 12]. Board Members of Silverhawk Homeowners' Association include or included Defendants Mark Grant, Brian Bowman, Aaron Ellis, Denver Acosta, Bhupender Pal, Amanda Lunsford, and Andrew Welch ("the Silverhawk Defendants"). *Id.* ¶ 2. Defendants Matthew L. Winton and Matt Adam Thomas are attorneys at Matthew L. Winton, PLLC ("the Winton Defendants"), which represented Silverhawk HOA in the below-detailed enforcement and litigation actions against Plaintiff. *Id.* ¶¶ 3-4.

In or around 2019, Plaintiff asked the Silverhawk Board whether Silverhawk residents were permitted to use their homes for short-term rentals. *Id.* ¶ 12. Lunsford allegedly told Plaintiff rentals were not restricted in the Silverhawk Neighborhood. *Id.* ¶ 13. In 2020, Grant informed Plaintiff that rentals were prohibited and threatened legal action. *Id.* ¶ 15. In or around February of 2021, Plaintiff received a violation notice imposing fines

---

[1] "[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001). Because of the direct relation of the three prior actions to matters currently at issue, the Court properly takes judicial notice of the following proceedings: *Silverhawk Homeowners Association, Inc. v. Adewale Eniola Tawose*, Dist. Ct. of Okla. Cnty., Okla., Case No. CJ-2021-4778, *Adewale Eniola Tawose v. Silverhawk Homeowners Association, Inc., et al.*, Dist. Ct. of Okla. Cnty., Okla., Case No. CJ-2024-3118, and *Adewale Eniola Tawose v. Silverhawk Homeowners Association, Inc.*, U.S. Bankr. Ct., N.D. Tex., Fort Worth Div., Case No. 25-04043-elm. The Court will also take judicial notice of the related proceedings in *In re Adewale Eniola Tawose*, U.S. Bankr. Ct., N.D. Tex., Case No. 24-43275-elm13.

for using his property for rentals and informing him he had received a warning in June of 2020 for such activity. *Id.* ¶ 16. After requesting a hearing on the issue on March 3, 2021, but receiving no response, Plaintiff attended a March 9, 2021, board meeting, where he renewed his request for a formal hearing. *Id.* ¶ 18. Plaintiff alleges that despite Welch's assurance that a hearing would be scheduled, Grant instructed Bowman to rescind the hearing. *Id.* ¶ 19. A new hearing occurred on July 6, 2021, but the Board failed to provide the results or to afford Plaintiff an opportunity to appeal its decision. *Id.* ¶¶ 22-24.

In November of 2021, Silverhawk filed a breach of contract action against Plaintiff ("Tawose I"). *Silverhawk Homeowners Association, Inc. v. Tawose*, Dist. Ct. of Okla. Cnty., Okla., Case No. CJ-2021-4778; Am. Compl. ¶ 24. According to Plaintiff, during the discovery phase of Tawose I, the Winton Defendants and some of the Silverhawk Defendants informed him there was no evidence related to Silverhawk's claim that the use of Plaintiff's property was a nuisance. *Id.* ¶ 26. But at a bench trial conducted from January 29th to February 2nd, 2024, Defendants presented Lunsford's "surprise testimony" that Plaintiff's use of his property violated Silverhawk's governing documents. *Id.* ¶¶ 26, 34, 36. Silverhawk prevailed after the state court found Plaintiff's property use was both a nuisance and a violation of the HOA's rules. *Id.* ¶ 36. The Tawose I Court entered its Journal Entry of Judgment ["Judgment I"] for Silverhawk on April 1, 2024, awarding $8,258 in assessments. *Id.* ¶ 37. Silverhawk, through the Winton Defendants, thereafter recorded the judgment in violation of, according to Plaintiff, Oklahoma statutory law's ten-day stay on such filings. *Id.* ¶ 38.

3

Plaintiff also alleges that in June of 2023, Bowman filed a complaint with the City of Oklahoma City Board of Adjustment alleging Plaintiff lacked a rental license. *Id.* ¶ 27. The city later concluded Plaintiff had an active rental license. *Id.* Bowman and the Winton Defendants sent more letters to the Board in September of 2023 seeking the denial of Plaintiff's rental license, complete with affidavits from Bowman and Ellis claiming Plaintiff's rental was a nuisance. *Id.* ¶ 30. The Board nevertheless granted Plaintiff's license. *Id.* ¶ 32.

In May of 2024, Plaintiff filed an action in state court against Silverhawk, its Board Members, and the Winton Defendants ("Tawose II"). *Tawose v. Silverhawk Homeowners Association, et al.*, Dist. Ct. of Okla. Cnty., Okla., Case No. CJ-2024-3118. Plaintiff asserted claims such as constructive fraud, gross negligence, and breach of fiduciary duty against the Tawose II Defendants, all related to the underlying dispute over the use of his Silverhawk Property for short-term rentals.

On June 13, 2024, the Tawose I court announced an attorney-fee award of over $152,000 in favor of Silverhawk, and an Amended Statement of Judgment ["Judgment II"] was entered. Am. Compl. ¶ 41. Silverhawk, through the Winton Defendants, recorded the amended judgment. *Id.* Plaintiff asserts this occurred in violation of various Oklahoma laws because it was done without a signature and in violation of the ten-day stay. *Id.* He also asserts the recording of the judgments immediately impaired his ability to refinance, sell, or bond the property. *Id.* n.5.

In September of 2024, Plaintiff filed a bankruptcy proceeding in Texas, triggering an automatic stay of the enforcement of judgments obtained prior to the commencement of

that case. *Id.* ¶ 43; *In re Adewale Eniola Tawose*, U.S. Bankr. Ct., N.D. Tex., Fort Worth Div., Case No. 24-43275-elm13. Plaintiff alleges that despite this stay, Silverhawk continued to take enforcement actions pursuant to the Judgments. Am. Compl. ¶¶ 44-47. The Bankruptcy Court later sustained Plaintiff's objection to Silverhawk's Proof of Claim related to those Judgments. *Id.* ¶ 48.

Plaintiff filed an adversary proceeding ("Tawose III") in his bankruptcy action against the Silverhawk and Winton Defendants. *Adewale Eniola Tawose v. Silverhawk Homeowners Association, Inc.*, U.S. Bankr. Ct., N.D. Tex., Fort Worth Div., Case No. 25-04043-elm. In April of 2025, Plaintiff voluntarily dismissed all claims against the Tawose II Defendants. *See Tawose*, No. CJ-2024-3118. In October of 2025, Tawose III was dismissed on abstention grounds. Am. Compl. ¶ 54.

Plaintiff commenced this action ("Tawose IV") in November of 2025, asserting claims against the Defendants related to the underlying HOA dispute and subsequent litigation. In February of 2026, this Court dismissed Plaintiff's claims against the Winton Defendants [Doc. No. 36], but gave Plaintiff an opportunity to amend his pleadings, which Plaintiff did. A deluge of motions followed, and the Court will take each in turn.

## I.    The Winton Defendants' Motion to Strike Plaintiff's Amended Complaint

Defendants ask this Court to strike Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(f), arguing Plaintiff has merely repleaded claims this Court previously dismissed. They rely heavily upon this Court's February Dismissal Order, in which it stated it would not tolerate a mere restatement of Plaintiff's claims.

5

Defendants further assert Plaintiff's Amended Complaint is much more than the "short and plain statement" contemplated by Rule 8.

Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement "establishes a ceiling (the complaint must be no more than 'a short and plain statement') and not a floor (the complaint must at least be a 'short and plain statement')." *Toevs v. Reid*, 267 F. App'x 817, 818-19 (10th Cir. 2008) (unpublished) (citation and internal quotation marks omitted). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (citation and internal quotation marks omitted).

In a motion to strike "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The motion's purpose is to "save the time and money that would be spent litigating issues that will not affect the outcome of the case." *Purzel Video GmbH v. Smoak*, No. 13-cv-001167-WYD-MEH, 11 F. Supp. 3d 1020, 1029 (D. Colo. Jan. 6, 2014) (quotation omitted). "[M]otions to strike are generally a disfavored, drastic remedy and are rarely granted." *Knighten v. Allstate Ins. Co.*, No. CIV-17-683-D, 2018 WL 718533, at *2 (W.D. Okla. Feb. 5, 2018) (citing *United States v. Hardage*, 116 F.R.D. 460, 463-64 (W.D. Okla. 1987)); *see also Tavasci v. Cambron*, No. CIV-16-0461 JB/LF, 2016 WL 6405896, at *7 (D.N.M. Oct. 25, 2016) (quotation omitted) (noting motions to strike "tend to be busywork, and crowd the docket"); *Lane v. Page*, 272 F.R.D. 581, 587, 599 (D.N.M. 2011)

(quotations omitted) (citing courts that describe the motion to strike as "a dilatory tactic," "purely cosmetic," and a "time waster[ ]"). Moreover, the Court "possesses considerable discretion in disposing of a Rule 12(f) Motion to Strike . . . ." *SFF–TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 978 (N.D. Okla. 2017) (quotation omitted).

The Court disagrees with Defendants' characterization of the Amended Complaint as a mere restatement of Plaintiff's previously dismissed claims. Plaintiff has made a meaningful effort to amend his pleadings; he shortened the Complaint by seventy pages, arranged it in a much more straightforward and concise manner, and added factual allegations in an attempt to correct the deficiencies in his previous Complaint.[2] Accordingly, and taking into account Plaintiff's pro se status, the Court declines to strike his Amended Complaint.

Defendants perfunctorily argue that this Court's previous Order has a "preclusive effect" on the Amended Complaint, and because the claims in Plaintiff's Amended Complaint all arise from the same events of the previous Complaint, those claims are barred. *See Watkins v. Genesh, Inc.*, 135 F.4th 1224, 1230 (10th Cir. 2025) (quotation omitted) ("[A] party cannot avoid preclusion by repackaging precluded claims under the rubric of slightly different legal theories where the 'new' and precluded claims stem from the same transaction or occurrence."). But "for claim preclusion to attach," there must be a "final judgment on the merits in a prior action." *Id.* at 1229.  As the "proponent[s] of preclusion," Defendants "bear[] the burden to show" its satisfaction. *Id.* at 1230. But

---

[2] It is another matter entirely whether Plaintiff's attempts to correct such deficiencies are successful such that his claims have any merit.

Defendants do not meaningfully argue that this Court's prior dismissal of Plaintiff's claims constitutes a final judgment on the merits. The Tenth Circuit has stated that dismissals without prejudice can sometimes constitute final judgments because "no 'further proceedings' in the case are anticipated." *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1159 (10th Cir. 2023) (citing *Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001)). But "'[w]hen the dismissal order expressly *grants* the plaintiff leave to amend, that conclusively shows that the district court intended only to dismiss the complaint [rather than the action]; the dismissal is thus not a final decision.'" *Id.* at 1160 (quoting *Moya v. Schollenbarger*, 465 F.3d 444, 451 (10th Cir. 2006)). This Court dismissed Plaintiff's claims against the Winton Defendants and indeed warned Plaintiff of the consequences of a mere restatement of such claims. But the Court clearly anticipated further proceedings in the case, giving Plaintiff leave to amend his Complaint and declining to preclude him from amending his claims against the Winton Defendants. The Winton Defendants have failed to meet their burden of establishing claim preclusion. In the absence of persuasive argument or authority to the contrary from the Winton Defendants, their Motion to Strike [Doc. No. 43] Plaintiff's Amended Complaint is DENIED.

## II.     The Winton Defendants' Motion for Sanctions

The Winton Defendants have also moved for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 11. Rule 11(b)(1)-(3) states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such

as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

The "central purpose of Rule 11[,]" which applies to attorneys and pro se litigants alike, "is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "In order to comply with Rule 11 and avoid sanctions thereunder, a pro se party's actions must be objectively reasonable." *Clements v. Chapman*, 189 F. App'x 688, 692-93 (10th Cir. 2006) (unpublished). However, "[a] litigant's pro se status may certainly be considered when determining whether to impose Rule 11 sanctions." *McCormick v. City of Lawrence*, 218 F.R.D. 687, 690 (D. Kan. 2003).

Defendants assert sanctions are warranted because the legal defects of Plaintiff's previously dismissed claims have not been rectified by Plaintiff's mere re-packaging of them in his Amended Complaint. But this Court's examination of the Amended Complaint, as well as a review of the arguments Plaintiff has presented in support of his amended claims, leads it to conclude that Plaintiff has made a meaningful effort to fix the deficiencies, both factual and in some cases legal, which led to the previous dismissal. The Court is also hesitant to address the parties' arguments regarding the viability of Plaintiff's amended claims as they pertain to the Winton Defendants in the context of either a Motion for Sanctions or Motion to Strike, particularly with the limited briefing on the issues currently before it.

9

"Courts are typically inclined to sanction pro se litigants under Rule 11 only when the litigant has been repeatedly warned that his or her legal theories are meritless or his or her improper purpose is clear from the record." *Rasmussen v. Burnett*, No. 24-CV-01727-SKC-KAS, 2025 WL 808364, at *3 (D. Colo. Mar. 12, 2025). Plaintiff's conduct, at least at this point, has not risen to that level. Although the Court reminds Plaintiff (now for the second time) that he must comply with Rule 11 and all other procedural and local rules, sanctions are not appropriate at this time. The Court simply cannot conclude that Plaintiff's Amended Complaint is "baseless"—just as it cannot conclude, with the briefing now before it, whether Plaintiff's amended claims against the Winton Defendants are viable. Accordingly, Defendants' Motion for Sanctions [Doc. No. 51] is DENIED without prejudice to resubmission, if appropriate.

## III.    Defendant Welch's Motion to Dismiss Plaintiff's Original Complaint

The filing of Plaintiff's Amended Complaint "supersedes the original and renders it of no legal effect." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991) (internal quotation omitted).  Because Welch's first Motion to Dismiss [Doc. No. 38] was filed prior to Plaintiff's Amended Complaint, it is DENIED AS MOOT.

## IV.    Defendant Welch's Amended Motion and the Other Silverhawk Defendants' Motion to Dismiss Plaintiff's Complaint[3]

Both Defendant Welch and the other Silverhawk Defendants seek dismissal of Plaintiff's claims pursuant to the Oklahoma Citizens Participation Act, OKLA. STAT. tit.

---

[3] Plaintiff asserts the Silverhawk Defendants' Motion to Dismiss was improperly served via email and seeks to have the Motion stricken. Counsel has represented this mistake was inadvertent and promised to comply with Federal Rule of Civil Procedure 5 moving

12, § 1430, *et seq.*, which is "designed to reduce the frequency of what are called SLAPP [Strategic Lawsuit Against Public Participation] lawsuits." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1233 (10th Cir. 2020). "The stated purpose of the act is to encourage and safeguard the constitutional rights of persons to 'petition, speak freely, associate freely and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file a meritorious lawsuit for a demonstrable injury.'" *Anagnost v. Tomecek*, 390 P.3d 707, 709-10 (Okla. 2017) (quoting OKLA. STAT. tit. 12, § 1430).

> In an OCPA proceeding, the initial burden is on the defendant seeking dismissal to show that the plaintiff's claim "is based on, relates to, or is in response to the [defendant's] exercise of the right of free speech, the right to petition, or the right of association." OKLA. STAT. tit. 12, § 1434(B). The burden then shifts to the plaintiff to show "by clear and specific evidence a *prima facie* case for each essential element of the claim in question." § 1434(C). If § 1434(C) is satisfied, the burden shifts back to the defendant to show "by a preponderance of the evidence" a defense to the plaintiff's claims. § 1434(D). If the plaintiff's *prima facie* case fails, or the defendant shows a defense by a preponderance of the evidence, the suit is dismissed.

*Krimbill v. Talarico*, 417 P.3d 1240, 1245 (Okla. Civ. App. 2017) (citations modified).

Welch argues the OCPA applies because Plaintiff's claims arise from Welch's role as a Board Member in connection with Silverhawk HOA's resort to judicial processes to

---

forward. Given that Plaintiff had actual notice of the Motion, responded to it in a timely manner, and does not represent that he has been prejudiced by Defendants' failing in any way, Plaintiff's request that this Court strike the Motion is DENIED. *See Hanson v. Fenn*, No. 1:19-cv-1124-WJ/KK, 2020 WL 3083985, at *3 (D.N.M. June 10, 2020) ("[E]ven to the extent that Plaintiff is arguing that although he received the filings electronically, he was entitled to copies via U.S. Mail, he does not explain what possible prejudice he could have suffered."). *See also* LCvR7.1(c) ("A response to a motion may not also include a motion or a cross-motion made by the responding party."). The Court will, however, warn Defendants against any future failings of this kind.

enforce its governing documents, thus implicating Welch's rights both to association and to petition. OKLA. STAT. tit. 12, § 1431(2), (4).[4] The other Silverhawk Defendants argue similarly, though they assert Plaintiff's claims implicate only their rights to petition.

Plaintiff argues that because the OCPA answers the same question as Federal Rule of Procedure 12(b)(6)—the standard for pre-trial dismissal—application of the OCPA in federal court violates the *Erie* doctrine. Under the OCPA, the showing required is indeed "somewhat more specific than that required to resist a traditional motion to dismiss, in that something more than formulaic recitals of elements and a simple claim of damages is necessary." *Candler v. James*, 588 P.3d 933, 937 (Okla. Civ. App. 2026). But whether the OCPA applies or not, Plaintiff's claims do not rise even to the level of 12(b)(6) plausibility, much less to what the OCPA may require. Thus, because the Court finds Plaintiff has failed to state any plausible claims, it need not address the parties' OCPA arguments.[5]

---

[4] Plaintiff argues Defendant Welch's Motion to Dismiss is unresponsive to his Second Amended Complaint because it is a cut-and-paste of his previous Motion to Dismiss. Defendant Welch filed a new Motion to Dismiss after the filing of the Second Amended Complaint. The Court will consider Welch's arguments as they pertain to the Second Amended Complaint and declines to deny the Motion on these grounds.

[5] *See Westwin Elements, Inc. v. CVMR Corp.*, No. CIV-25-19-D, 2025 WL 3473300, at *3 n.3 (W.D. Okla. Dec. 3, 2025) (declining to address the parties' OCPA argument where the plaintiff failed to state a plausible claim for abuse of process). The Court notes another court in this district has indicated that even where a complaint fails pursuant to Rule 12(b)(6), it does not moot the OCPA arguments because the OCPA provides for relief such as the recovery of attorney's fees where dismissal occurs. *KLX Energy Servs., LLC v. Magnesium Mach., LLC*, 521 F. Supp. 3d 1124, 1130 n.4 (W.D. Okla. 2021) (citations omitted). But even after the *KLX Energy* Court determined the OCPA applied in both federal court and that particular case, it denied "an award because the OCPA motion was only successful in part . . . and because the motion achieved nothing beyond what was achieved under Rule 12(b)(6)." *Id.* at 1134. Given that Defendants' OCPA Motions here also achieve nothing beyond what is achieved under Rule 12(b)(6), this Court would decline to award fees and costs at this juncture anyway. *See* OKLA. STAT. tit. 12,

### a. Plaintiff's Slander of Title Claims Against Silverhawk, Bowman, Ellis, and Pal and his Quiet Title Claim Against Silverhawk

To state a claim for slander of title, Plaintiff must allege: "1) [the] publication of a statement; 2) the published statement was false; 3) the publication was maliciously made; 4) the publication caused [him] to incur special damages resulting therefrom; and 5) [he] owns or possesses an interest in the subject property." *Bays Expl., Inc. v. PenSa, Inc.*, No. CIV-07-754-D, 2012 WL 4128120, at *19 (W.D. Okla. Sep. 18, 2012) (citing *Zehner v. Post Oak Oil Co.*, 640 P.2d 991, 994 (Okla. Civ. App. 1981)). Plaintiff claims the Defendants knowingly published false claims against his title by recording Judgments I and II earlier than permitted by law. He claims Judgment II is void for several reasons. He further argues Defendants slandered his title by failing to release either judgment after they were (1) satisfied by Plaintiff, (2) disallowed by the Bankruptcy Court, or (3) reversed by the Oklahoma Court of Civil Appeals in Tawose I.

Plaintiff also brings a quiet title claim against Silverhawk, asserting that although Judgments I and II are invalid and/or have been eliminated by other judicial determinations, Silverhawk has refused to release either Judgment, thus impairing the marketability of Plaintiff's title.

Plaintiff's slander of title and quiet title claims both hinge on whether the Tawose I Judgments are valid and enforceable. At this time, however, there is an appeal of Tawose

---

§ 1438(A)(1) ("If the court orders dismissal . . . under the [OCPA], the court shall award to the moving party[ ] [c]ourt costs, reasonable attorney fees and other expenses incurred in defending against the legal action *as justice and equity may require*.") (emphasis added).

13

I pending before the Oklahoma Supreme Court. *See Silverhawk Homeowners Ass'n, Inc. v. Adewale Eniola Tawose*, No. DF-122129 (Okla. Apr. 1, 2024).

The *Rooker-Feldman*[6] doctrine prevents federal district courts from entertaining actions brought by "'state-court losers'" challenging "'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). To determine if *Rooker-Feldman* applies, courts consider whether "the state court judgment caused, actually and proximately, the injury for which the federal court plaintiff seeks redress." *Kanth v. Lubeck*, 123 F. App'x 921, 924 (10th Cir. 2005) (unpublished) (quotation and emphases omitted). "If it did, *Rooker-Feldman* deprives the federal court of jurisdiction." *Id.* (quotation omitted). The *Rooker-Feldman* doctrine applies both to "claims actually decided by a state court, and claims inextricably intertwined with a prior state-court judgment." *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) (quotation and alterations omitted). At bottom, the *Rooker-Feldman* doctrine instructs that "errors in state cases should be reviewed and settled through the state appellate process." *Id.* at 1256 n.11.

Plaintiff filed this lawsuit after the state court judgments were rendered. For Plaintiff to succeed on his slander of title claim, this Court would have to determine whether the Judgments filed and maintained by Defendants were "false." To do so, even while the

---

[6] Though Defendants do not explicitly raise *Rooker-Feldman* as a reason for dismissal, "because the issue is jurisdictional, [the Court] may address it sua sponte." *Cory v. Fahlstrom*, 143 F. App'x 84, 87 n.1 (10th Cir. 2005) (unpublished).

14

underlying state court action is still pending,[7] would require this Court to "review, reverse, or invalidate a [] state-court decision"—something it cannot do. *Burr v. Robinson*, 162 F.3d 1172 (Table), at \*1 (10th Cir. 1998) (unpublished). The same can be said for Plaintiff's quiet title claim, which asks this Court to declare Judgments I and II void and of no force or effect and to quiet title in Plaintiff's favor.

*Rooker-Feldman* operates to prevent parties from seeking to have state-court judgments declared void on the basis of alleged errors or mistakes. Even if the state-court erred "that [does] not make the judgment void, but merely [leaves] it open to reversal or modification in an appropriate and timely appellate proceeding." *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415 (1923)). This Court will not interfere with the validity of the state court judgments. It thus declines to exercise jurisdiction over Plaintiff's slander of title and quiet title claims.[8]

---

[7] "[A]llowing federal district courts to review state-court judgments while they are on appeal in the state-court system would undermine the '[c]ooperation and comity' on which our federal system is built." *T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1751 (2026) (quoting *Ruhrgas AG v. Marathon Oil. Co.*, 526 U.S. 574, 586 (1999)) (rejecting the theory that *Rooker-Feldman* bars only those federal suits which seek review of final judgments of the state's highest court). "Federalism principles are thus best served by continuing to apply *Rooker-Feldman* to federal cases in which plaintiffs seek review of state-court judgments, regardless of whether those judgments are final trial-court judgments or those of a State's highest court." *Id.* at 1752.

[8] Though Plaintiff's claims are partially based on Defendants' alleged failure to *release* the judgments after they were satisfied, the Court finds it cannot rule on this issue either without inappropriately stepping into the ongoing state proceedings. As the validity of the judgments are still pending, the Court cannot issue a ruling upon whether those same judgments were satisfied and/or should have been released. Furthermore, the Court doubts the propriety of its becoming involved in the enforcement of the state court judgment. *See, e.g.*, *Montgomery v. Okla. ex rel. Okla. Dep't of Pub. Safety*, No. 10-CV-743-GKF-PJC, 2012 WL 826932, at \*4 (N.D. Okla. Mar. 9, 2012) ("Issues of enforcement of the state court's order should be brought before the state courts."). *See also Pennzoil Co. v. Texaco,*

### b. Plaintiff's Fair Debt Collection Practices Act Claims Against Silverhawk

Plaintiff's FDCPA claim asserts Defendant improperly filed a proof of claim in Plaintiff's bankruptcy case based on the underlying state court judgments. He argues that each day Defendant refuses to release the Judgments, it engages in a new violation of the FDCPA by falsely representing that Silverhawk holds a valid secured interest in Plaintiff's property. His FDCPA claims, like his slander of title and quiet title claims, would thus require this Court to adjudicate whether the state court judgments are valid and enforceable—something this Court cannot do without violating *Rooker-Feldman*.

Moreover, Plaintiff's FDCPA claims against Silverhawk fail for other reasons.

"The FDCPA regulates 'debt collector[s],' defined as persons who 'regularly collect[ ] or attempt[ ] to collect' someone else's debts." *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 (11th Cir. 2019) (quoting 15 U.S.C. § 1692a(6)). Given this statutory definition, the FDCPA typically "does not apply to creditors trying to collect their own debt." *Id.* There are, however, "instances in which creditors collecting their own debt are deemed debt collectors under the statute." *Id.* In particular, "[t]he FDCPA applies to 'any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.'" *Id.* (quoting 15 U.S.C. § 1692a(6)). This is known "as the false-name exception." *Id.*

The Tenth Circuit has not determined the controlling standard for when the false-name exception applies. Some circuits "hold that the false-name exception applies when the 'least sophisticated consumer' would believe a third party was involved in collecting a debt." *Id.* (citing cases). In other FDCPA contexts, however, we have rejected the "least sophisticated consumer" standard in favor of "the 'reasonable consumer' standard." *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1071-72 (10th Cir. 2022) (discussing standard for assessing materiality of misleading, deceptive, or false statements).

---

*Inc.*, 481 U.S. 1, 14 (1987) (indicating *Younger* abstention is appropriate in cases asking federal courts to "interfere with the execution of state judgments").

*Heidelberger v. Ill. River Ranch Recreational Vehicle Park Prop. Owners Ass'n, Inc.*, No. 24-7056, 2025 WL 573824, at *3 (10th Cir. 2025) (unpublished).

But this Court need not determine which standard applies because Plaintiff's complaint is deficient under both. *Id.* Plaintiff does not allege that Silverhawk used a name other than its own when collecting its debt. His theory is that Silverhawk's reliance on the Judgments, suggesting a judicial entity validated the debt, is a "classic example" of using a name other than the creditor's. Lacking from this theory is any allegation that relying on the Judgments would lead a consumer to believe that a third person (here, it seems, the state court) was collecting the debt rather than Silverhawk through its lawyers. Based on the pleadings, "neither a sophisticated nor a reasonable consumer could have been confused that it was [Silverhawk], and not any other entity, that was attempting to collect" on the Tawose I judgments. *Id.*

### c. Plaintiff's Claim Against Welch for Willful Violation of Automatic Stay

Plaintiff asserts Welch violated the automatic stay imposed by virtue of the filing of his bankruptcy action by continuing to seek enforcement of the Judgments against Plaintiff. "In general, actions for violations of the automatic stay should be brought in the bankruptcy court. The bankruptcy court is charged with enforcing the automatic stay." *In re Denton*, No. 23-80938-PRT, No. 24-8011-PRT, 2024 WL 5251904, at *3 (Bankr. E.D. Okla. Dec. 30, 2024) (footnote omitted); *World Enters. v. Aquila, Inc.*, No. 2:12-cv-00021-DN, 2013 WL 4592204, at *9 (D. Utah Aug. 28, 2013) ("[O]ther courts have held that the proper forum for a claim for damages arising out of an alleged breach of the automatic stay provision is the bankruptcy court, not the district court.") (quotation omitted). The

17

Bankruptcy Court is currently adjudicating Plaintiff's claim that the Defendants violated the automatic stay. *In re Tawose*, Case No. 24-43275-elm13, Doc. No. 259 (Bankr. N.D. Tex. July 24, 2026) (setting September 2026 evidentiary hearing on Plaintiff's stay violation motion). In the absence of persuasive argument or authority to the contrary from Plaintiff, this Court concludes that it would be more appropriate for Plaintiff to pursue his willful violation claim before the Bankruptcy Court—*something Plaintiff is already doing*.

### d. Plaintiff's Actual and/or Constructive Fraud Claims Against Silverhawk, Lunsford, Grant, Bowman, Acosta, Welch, Ellis, and Pal

Plaintiff alleges that in 2019, Lunsford falsely represented that the Silverhawk HOA permitted rental properties. Plaintiff also alleges that in 2021, Grant falsely informed him that daycares were allowed in Silverhawk, and that Bowman represented the same at the July 2021 hearing (at which Welch and Pal were present) and his August 2023 deposition.

There is a two-year statute of limitations in Oklahoma for tort claims such as fraud. *See* OKLA. STAT. tit. 12, § 95(A)(3). Plaintiff first brought a claim for fraud against the same Defendants in Tawose II in May of 2024—well over two years after his 2019 and 2021 fraud allegations. And Plaintiff's arguments that the Oklahoma Savings Statute, OKLA. STAT. tit. 12, § 100, which allows a party a one-year grace period for refiling *a timely-commenced action* if it fails otherwise than on the merits, are unavailing here; although Plaintiff voluntarily dismissed his Tawose II claims in April of 2025 and brought this action in November of 2025, it appears as though his tort claims were already barred when he initiated Tawose II in 2024.

18

Plaintiff argues he did not discover the fraud until the Tawose I trial in January of 2024, and that Defendants fraudulently concealed their misrepresentations until then. "[I]n suits based on fraud, the statute of limitations [ ] begins to run from the time of discovery of the fraud or from such time as the victim by the exercise of ordinary diligence might have discovered [the] same." *Baker v. Massey*, 569 P.2d 987, 991 (Okla. 1977); *see also Lewis v. Wal-Mart Stores, Inc.*, No. 02CV0944CVE-FHM, 2005 WL 3263377, at *8 (N.D. Okla. Dec. 1, 2005) (quoting *Tice v. Pennington*, 30 P.3d 1164, 1171 (Okla. Civ. App. 2001)) ("[T]olling resulting from fraudulent concealment ends 'when the plaintiff knows, or reasonably should know, of enough critical facts about the injury and its cause to protect himself or herself by seeking legal assistance.'"). Plaintiff admits he learned Lunsford's representations were false as early as June of 2020. Am. Compl. ¶ 15. He further states he attempted to raise many of his current claims before the Tawose I Court in 2023. Indeed, the Tawose I docket reveals Plaintiff sought leave to amend his counterclaim to bring a claim for constructive fraud, and the docket reflects Plaintiff had access to the Silverhawk covenants and restrictions (including the provisions related to in-home daycares) as early as July 11, 2023, when he filed his motion. *See Silverhawk v. Tawose*, No. CJ-2021-4778, Doc. No. 1056087656 (July 11, 2023). This completely undermines any of Plaintiff's assertions that he did not discover his fraud claims until January of 2024 or could not have promptly discovered the truth by his own ordinary diligence.

With respect to Plaintiff's allegations that Bowman made fraudulent representations at his August 2023 deposition, Plaintiff is barred from recovery as a matter of law. There is no civil remedy for litigation-related misconduct under Oklahoma law. *Patel v. OMHS*

*Med. Ctr., Inc.*, 987 P.2d 1185, 1201-02 (Okla. 1999) (finding no civil remedy for plaintiff's allegations that opposing counsel committed fraud, deceit, perjury, and spoliation of evidence during an earlier, separate trial). "Oklahoma offers 'participants in judicial proceedings an absolute immunity against later civil suits grounded in litigation conduct.'" *Tyler v. United States*, No. CIV-19-01102-JD, 2024 WL 1862324, at *11 (W.D. Okla. Apr. 29, 2024) (quoting *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1185 (10th Cir. 2014)). "[R]emedies for 'litigation-related misconduct' are to be pursued in the litigated case." *Id.* (quoting *Patel*, 987 P.2d at 1202-03). *See also Anderson v. Pollard*, No. 21-5019, 2021 WL 3503418, at *1 n.2 (10th Cir. 2021) (unpublished) (citing *Cooper v. Parker-Hughey*, 894 P.2d 1096, 1100 (Okla. 1995)) ("[N]o cause of action for perjury exists under either federal or Oklahoma law."). "Oklahoma also 'recognize[s] an absolute privilege for communications made preliminary to proposed judicial or quasi-judicial proceedings in favor of attorneys, parties and witnesses.'" *Id.* (quotation omitted). Accordingly, this Court cannot provide Plaintiff a remedy for Bowman's alleged deposition misrepresentations.

### e. Plaintiff's Abuse of Process Claims Against Silverhawk, Bowman, Ellis, Acosta, Pal, and Welch

Plaintiff argues Defendants abused multiple legal processes for the improper purpose of coercing him from his home, extracting unwarranted payments, and punishing him for exercising his rights. Those legal processes allegedly include (1) the municipal complaints asserting Plaintiff lacked a rental license and seeking the denial of such a license, (2) the premature recording of Judgment I, (3) the filing of and other enforcement

actions related to Judgment II, (4) the failure to release the Judgments after other judicial determinations, and (5) multiple improper actions related to the bankruptcy case.

To state a claim for abuse of process, Plaintiff must plead "'(1) the improper use of the court's process (2) primarily for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse.'" *Schlottman v. Unit Drilling Co.*, No. CIV-08-1275-C, 2009 WL 1657988, at \*2 (W.D. Okla. June 11, 2009) (quoting *Greenberg v. Wolfberg*, 890 P.2d 895, 905 (Okla. 1994)). "The key issue in any abuse of process claim is whether a party has attempted to use the legal system 'to obtain a result not lawfully warranted or properly attainable.'" *FLSmidth A/S v. Jeffco, LLC*, No. 08-CV-0215-CVE-SAJ, 2008 WL 4426992, at \*6 (N.D. Okla. Sept. 25, 2008) (quoting *Neil v. Penn. Life Ins. Co.*, 474 P.2d 961, 965 (Okla. 1970)). Even if the predicate action was motivated by malicious intentions, if the predicate action was used for an authorized purpose, there is no abuse of process. *Greenberg*, 890 P.2d at 905. There "must be some 'definite act or threat not authorized by the process.'" *Gore v. Taylor*, 792 P.2d 432, 435 (Okla. Civ. App. 1990) (quoting W. Prosser, Handbook of the Law of Torts § 121 (4th ed. 1971)).

Even if the Defendants' actions were motivated by the malicious intentions of forcing Plaintiff out of his home, most of the actions taken by Defendants are all valid uses of process in order to obtain the lawful outcome of enforcing the HOA's covenants. Moreover, to the extent Defendants took any improper actions, these actions are once again litigation-related misconduct for which Oklahoma law provides no civil remedy. *See Patel*, 987 P.2d at 1201-02. To the extent Plaintiff seeks to sanction the Defendants for their alleged misconduct in any of the state or bankruptcy court forums, he should seek to do so

in those actions instead. Moreover, many of Plaintiff's claims, were this Court to adjudicate them, would require it to inquire into the validity of the state court judgments, something it cannot do without violating *Rooker-Feldman*.

### f. Plaintiff's Breach of Fiduciary Duty Claims against Lunsford, Grant, Ellis, Bowman, Acosta, Welch, and Pal

Plaintiff argues Defendants breached their fiduciary duties when they (1) represented rentals were permitted in 2019, (2) treated Plaintiff's rental as prohibited while permitting in-home daycares, (3) failed to provide written results of the July 2021 hearing and denied Plaintiff an appeal, (4) approved litigation and concealed Lunsford as a witness, (5) authorized unlawful collection actions in connection with the Judgments and bankruptcy case, (6) failed to respond to accounting requests, (7) submitted false affidavits to the Bankruptcy Court, (8) maintained the liens/Judgments despite having no lawful basis for them, and (9) filed the municipal complaints against Plaintiff.

Once again: Plaintiff's claims related to Lunsford and the 2021 hearing are time-barred.[9] Plaintiff's arguments related to concealing witnesses, approving litigation, and misconduct in the bankruptcy case are complaints of Defendants' litigation-related misconduct for which this Court can provide no remedy. And to the extent Plaintiff's claims rely on this Court to determine the enforceability of Judgments I and II, *Rooker-Feldman* bars this Court from doing so.

---

[9] In the absence of persuasive argument or authority to the contrary, it appears that the statute of limitations period for breach of fiduciary duty claims is also two years. *See FDIC v. UMIC, Inc.*, 136 F.3d 1375, 1380 (10th Cir. 1998) (applying Oklahoma law to a breach of fiduciary duty claim).

### g. Plaintiff's Claims for Gross Negligence Against Lunsford, Grant, Ellis, Bowman, Acosta, Welch, Pal, and Silverhawk

Plaintiff raises essentially the same factual allegations as those previously mentioned in asserting that Defendants breached duties owed to Plaintiff and acted with gross negligence: (1) Lunsford lying in 2019, (2) denying Plaintiff a hearing in March of 2021, (3) depriving Plaintiff of results or an appeal of his July 2021 hearing before filing suit, (4) concealing Lunsford as a witness during discovery, (5) collecting and recording the Judgments, and (6) misconduct related to the bankruptcy proceeding. Once again— these claims are either time-barred and/or for litigation-related misconduct for which this Court provides no remedy. Moreover, Plaintiff has failed to plausibly allege that many of these actions, taken pursuant to normal litigation and enforcement procedures, amount to *gross* negligence or indeed negligence at all.

### h. Plaintiff's Civil Conspiracy Claims Against All Defendants

Plaintiff asserts multiple civil conspiracy claims against the Silverhawk Defendants, asserting they were in conspiracy with each other and/or the Winton Defendants. The first conspiracy claim asserts Defendants conspired to enforce the void and unauthorized Judgement II against Plaintiff's property through unlawful means. *Rooker-Feldman* bars this Court's review of such a claim because it would require this Court to determine the validity of the underlying state court Judgments. Furthermore, much of this claim reiterates Plaintiff's allegations of Defendants' litigation-related misconduct, for which this Court cannot provide a remedy.

23

The second conspiracy claim asserts Defendants conspired to violate the automatic stay imposed by virtue of Plaintiff's bankruptcy action. The third conspiracy claim regurgitates the same allegations related to the 2021 hearings, enforcement of covenants against Plaintiff, concealment of Lunsford, discovery-related misconduct, bankruptcy case misconduct, and maintenance of the liens. Both claims fail for the same reasons as many of Plaintiff's others—they are either time-barred and/or seek relief for litigation-related misconduct. Furthermore, the Court has already found the Bankruptcy Court is the more appropriate forum for Plaintiff to present allegations related to Defendants' alleged violation of the automatic stay.

### i. Plaintiff's Claims for Intentional Infliction of Emotional Distress Against the Silverhawk Defendants

Plaintiff asserts Defendants committed IIED by failing to accord him the proper process during pre-litigation enforcement of the HOA's covenants, filing municipal complaints against him, enforcing and/or failing to release the Judgments, violating the automatic stay, and committing other misconduct in the bankruptcy action. Once again— many of these claims are time-barred and most are for litigation-related misconduct for which this Court cannot provide a remedy. Moreover, as this Court stated in its February Order, Plaintiff's IIED claim is largely based on Defendants' conduct related to exercising their legal rights through litigation and enforcement activities. To establish an IIED claim, Plaintiff must plead (1) that Defendants' conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and that such conduct is regarded as atrocious and utterly intolerable in a civilized community," and (2) that the

24

resulting emotional distress was "so severe that no reasonable person could be expected to endure it." *Comput. Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735-36 (Okla. 2002) (citations and quotations omitted). Plaintiff has failed to plausibly allege that Defendants' conduct was either outrageous and extreme and/or that it caused him the type of emotional distress contemplated by an IIED claim.

### j.  Plaintiff's Breach of Contract Claim Against Silverhawk

Plaintiff asserts Silverhawk breached its governing documents by denying Plaintiff a hearing, failing to provide written results of a hearing once he received one, filing suit prior to completing the required hearing process, levying fines on Plaintiff without proper notice and a hearing, failing to provide an accounting upon Plaintiff's written requests, refusing access to books and records, and breaching the implied duty of good faith and fair dealing by, among other actions, selectively enforcing covenants, concealing a material witness, recording a defective lien, etc., etc. This claim is another regurgitation of the factual allegations and arguments which this Court has already found (1) seek review of the state-court Judgments, something the Court cannot do under *Rooker-Feldman* and/or (2) complain of litigation-related misconduct, for which this Court cannot provide a remedy.

The only allegations potentially not barred by either of the above doctrines are Plaintiff's claims that Silverhawk failed to provide him with an accounting and access to corporate books and records. These allegations are largely duplicative of his claim for denial of access to books and records, which this Court more properly discusses below.

25

### k. Plaintiff's Claim for Denial of Access to Books and Records Against Silverhawk

Defendants largely ignore Plaintiff's allegations that he has both statutory and contractual rights to inspect the books and records of the HOA.[10] *See* Am. Compl. ¶ 11 (quoting from Section 6.4(l) of the HOA's governing document: the Board "shall" make available the books of account and financial records "at any reasonable time and for a purpose reasonably related to [the Member's] interest in a Lot"); OKLA. STAT. tit. 18, § 1065 ("Any shareholder . . . upon written demand . . . shall have the right . . . to inspect for any proper purpose . . . [t]he corporation's stock ledger, . . . and its other books and records."). Plaintiff asserts he has requested access to the corporation's records for a reasonable purpose but has been denied by Silverhawk. Silverhawk argues Plaintiff is improperly substituting a limited statutory inspection right as a substitute for discovery in ongoing litigation. But Plaintiff asserts the denial of access to the books and records occurred in 2025, after both Tawose I and Tawose II had terminated—though Tawose I is still pending appeal and Plaintiff's bankruptcy case is ongoing.

"The proper purpose required by [§ 1065 ] . . . is one wherein a stockholder seeks information bearing upon the protection of his interest and that of other stockholders in the

---

[10] Though Plaintiff asserts Silverhawk failed to provide him with an accounting *and* access to the corporate books and records, the Amended Complaint indicates that what he seeks is access to Silverhawk's financial records. *See* Am. Compl. ¶ 45 ("On January 21, 2025, Plaintiff demanded . . . an accounting . . . . Silverhawk did not respond. On February 18, 2025, Plaintiff *again* requested access to financial records under 18 O.S. § 1065.") (emphasis added). Accordingly, the Court will examine this claim in the context of Plaintiff's claimed contractual and/or statutory right to access Silverhawk's books and records.

corporation." *Fears v. Cattlemen's Inv. Co.*, 483 P.2d 724, 727 (Okla. 1971). A proper purpose is a "purpose lawful in character, wherein a stockholder in good faith seeks information . . . not contrary to the interests of the corporation, as distinguished from one seeking to gratify his curiosity or proceeding for speculative or vexation purposes." *Wolozyn v. Begarek*, 378 P.2d 1007, 1011 (Okla. 1963). Proper purposes can, it seems, include investigation of improper transactions or mismanagement and clarification of unexplained discrepancies in a corporation's financial statements. 5A *Fletcher Cyclopedia of the Law of Corporations* § 2222 (2009).

Though the Court finds the issue is close, given the complete lack of authority or persuasive argument from Defendant on this point it cannot conclude Plaintiff has failed to state a claim (even under OCPA standards)[11] for Silverhawk's denial of his access to books and records. Plaintiff asserts in his Amended Complaint that Silverhawk has failed to release liens which he has allegedly satisfied. Taking into account his pro se status, the Court can infer Plaintiff seeks to examine certain of Silverhawk's books and records to clarify any discrepancies in their financial records.

---

[11] Even if the Court were to apply the OCPA in general, it remains unsure whether the OCPA would apply to this *particular claim* by Plaintiff, as he is asserting a statutory and/or contractual right to access corporate books and records. *See Terry v. Ely*, No. 19-CV-00990-PRW, 2020 WL 9074888 (W.D. Okla. Sep. 8, 2020) (applying OCPA dismissal standards to some of the plaintiff's claims and not others). The Court is unconvinced such a claim is in response to Silverhawk's free speech, petitioning, or association rights. Under plain 12(b)(6) standards, the Court is even more confident Plaintiff has stated a claim, however tenuous, for violation of his rights to access Silverhawk's books and records. Whether such a claim will succeed at a later stage is, of course, another matter.

Perhaps the breadth of Plaintiff's request is not reasonably related to his interest in the Lot or Plaintiff seeks protected information Silverhawk cannot divulge. But the Court finds Plaintiff has, *at least at this stage*, plausibly asserted that he attempted to exercise his statutory and/or contractual right to access Silverhawk's records and was entirely rebuffed. Defendant's cursory and overbroad arguments that Plaintiff's purposes are improper do little to convince this Court otherwise. Thus, in light of the total lack of persuasive argument or authority to the contrary from Defendant, this claim will not be dismissed.

## V.    Plaintiff's Motions to Authorize Alternative Service and Extend Time for Service on Defendant Denver Acosta

Counsel has entered an appearance [Doc. No. 61] and filed a Motion to Dismiss [Doc. No. 45] on behalf of Defendant Acosta. That Motion to Dismiss "does not raise the defenses of insufficient process or insufficient service of process." *McGann v. Jagow*, No. 1:24-cv-00727-SBP, 2024 WL 3340091, at *4 (D. Colo. June 20, 2025) (citing FED. R. CIV. P. 12(b)(4) and (5)). "By doing so, Defendant[] [Acosta] waived service." *Id.* (quoting FED. R. CIV. P. 12(h)(1)) ("'A party waives any defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the circumstances described in Rule 12(g)(2)[.]'"). Rule 12(g)(2) states: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." *See also Fed. Deposit Ins. Corp v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992) ("If a party files a pre-answer motion and fails to assert the defense[] of . . . insufficiency of service, he waives these defenses."). Furthermore, the instant Order dismisses Acosta from the case entirely.

28

Accordingly, Plaintiff's Motions to Authorize Alternative Service and Extend Time for Service on Defendant Denver Acosta [Doc. Nos. 53, 57] are DENIED as moot.

## VI.    The Winton Defendants' Motion to Strike

Plaintiff has filed a Notice of Supplemental Evidence [Doc. No. 58], which he indicates is directly relevant to the motions this Court ruled upon above. The Winton Defendants ask the Court to either strike the Notice and its exhibits or decline to consider them in deciding the pending motions [Doc. No. 67]. The Court has examined Plaintiff's Notice and the exhibits and finds that, whether it considered them or not, they would not affect its above rulings. Accordingly, Defendants' Motion to Strike [Doc. No. 67] Plaintiff's Notice is DENIED AS MOOT.

## CONCLUSION

Accordingly, the Winton Defendants' Motion to Strike [Doc. No. 43] and the Winton Defendants' Motion for Sanctions [Doc. No. 51] are DENIED. Plaintiff's Motion to Authorize Alternative Service [Doc. No. 53] and Motion to Extend Time for Service [Doc. No. 57], as well as Defendant Welch's Motion to Dismiss [Doc. No. 38] and the Winton Defendants' Motion to Strike [Doc. No. 67] are DENIED AS MOOT. Defendant Welch's Amended Motion to Dismiss [Doc. No. 44] is GRANTED. The other Silverhawk Defendants' Motion to Dismiss [Doc. No. 45] is GRANTED IN PART and DENIED IN PART; Claim XIV against Silverhawk alone survives. The rest of the claims, to the extent they are asserted against the Silverhawk Defendants, including Defendant Welch, are DISMISSED. Thus the only remaining Defendants in this action are (1) the Winton Defendants and (2) Silverhawk.

IT IS SO ORDERED this 29th day of July, 2026.

_____

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

30